[No. 3990-1-III.   Division Three.   July 16, 1981.]

PAUL WISEMAN, *Appellant,* v. GOODYEAR TIRE AND
RUBBER COMPANY, *Respondent.*

*Greg A. Rubstello* and *Caw & Rubstello,* for appellant.

*Donald P. Swisher* and *Garvey, Schubert, Adams &*

*Barer,* for respondent.

Roe, J.—Paul Wiseman was injured when his pickup truck left the road. He sued Goodyear Tire, claiming the right front tire on the truck blew out due to a manufacturing defect. Goodyear claimed the accident was caused by Wiseman's failure to handle the truck properly. The truck was junked before it could be examined for possible cause of the accident.

After trial, the jury found in favor of Goodyear. Wiseman's only issues on appeal concern the language in one of the instructions given to the jury.

At the outset, Goodyear argues Wiseman failed to comply with two of the Rules of Appellate Procedure and therefore we should not consider the merits of this appeal. First, Wiseman failed to comply with RAP 10.4(c), which requires a party to set out the material portions of a challenged jury instruction in his brief. Although Wiseman did not set out the full text of instruction No. 5 in his opening brief, he corrected this failure in his reply brief. There is no indication Goodyear was prejudiced by Wiseman's omission and there is no need for this court to impose sanctions. RAP 1.2; RAP 18.9; *see Minert v. Harsco Corp.,* 26 Wn. App. 867, 870, 614 P.2d 686 (1980). Goodyear also argues the partial report of proceedings submitted by Wiseman is insufficient to resolve the issues in this case. An appellant is required to submit only those portions of the report of proceedings necessary to present the issues raised on review. RAP 9.2(b). If error is urged based on the trial court's giving or failing to give an instruction, the appellant should include all instructions given, the relevant instructions proposed, the party's objections to the instructions given and the court's ruling on the objections. RAP 9.2(b); *see Stuart v. Consolidated Foods Corp.,* 6 Wn. App. 841, 846, 496 P.2d 527 (1972). Wiseman has provided this court with the required portions of the report of proceedings. Thus, Goodyear's procedural arguments are rejected.

In his complaint Wiseman alleged the tire manufactured

by Goodyear was unreasonably dangerous, as there was a 21–inch–long failure in the interliner as well as cord separation in the tire itself. The jury was instructed:

INSTRUCTION NO. 5

. . .
You are further instructed that the plaintiff has the burden of proving:
(1) That there was a defect in this tire which was the cause of the accident;
(2) That the defect existed at the time the product left the manufacturer;
(3) That the defect was not known to the plaintiff;
(4) That the defect rendered the product unreasonably dangerous; and
(5) That the defect was the proximate cause of the plaintiff's injuries and damages.

Wiseman claims this instruction requires proof that the tire was both defective (element 1) and unreasonably dangerous (element 4), contrary to the law in this state.

In *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969), the court adopted Restatement (Second) of Torts § 402A (1965),[1] which applies the concept of strict liability to manufacturers. Comment *g* to section 402A states the elements on which the plaintiff has the burden of proof:

(1) that there was a defect, (2) which existed at the time the product left the hands of the manufacturer, (3) which was not contemplated by the user, (4) which renders the product unreasonably dangerous, and (5) that such

---

[1]Restatement (Second) of Torts § 402A (1965):
"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
"(a) the seller is engaged in the business of selling such a product, and
"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
"(2) The rule stated in Subsection (1) applies although
"(a) the seller has exercised all possible care in the preparation and sale of his product, and
"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

defect was the proximate cause of plaintiff's injury. *Ulmer v. Ford Motor Co., supra* at 535 (Neill, J., concurring). We recently reaffirmed this 5–part burden of proof in *Bich v. General Elec. Co.,* 27 Wn. App. 25, 28, 614 P.2d 1323 (1980). *See also Potter v. Van Waters & Rogers, Inc.,* 19 Wn. App. 746, 751, 578 P.2d 859 (1978); *Lamon v. McDonnell Douglas Corp.,* 19 Wn. App. 515, 521, 576 P.2d 426 (1978), *aff'd,* 91 Wn.2d 345, 588 P.2d 1346 (1979).

Not all cases sounding in strict liability are based on the same type of defect. Some causes of action result from manufacturing defects, when an individual product is improperly assembled; others result from design defects, where the product by the nature of its design is unreasonably dangerous; and others arise from the manufacturer's failure to properly warn or instruct the users of a product. 2 L. Frumer & M. Friedman, *Products Liability* § 16A[4][f][i], at 3B–118.2–.3 (1981). Regardless of the cause of the defect, however, the basic question to be answered is whether the product performs as the consumer reasonably expects it will. 2 J. Dooley, *Modern Tort Law* § 32.35 (1977); *see Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 154, 542 P.2d 774 (1975).

In many states, including Washington, the elements of proof required for each type of defect case are not always the same. In *Ulmer,* a manufacturing defect case, the 5–part test set out in the Restatement was adopted. In *Seattle–First Nat'l Bank v. Tabert, supra,* which involved the defective design of a Volkswagen microbus, the court extended strict liability to design defect cases. It then considered whether the 5–part test of *Ulmer* applied in a design defect case, *i.e.,* must a product be both defective and unreasonably dangerous? After considering the positions of various jurisdictions, *see Seattle–First Nat'l Bank v. Tabert, supra* at 151–52, the court held, "If a product is unreasonably dangerous, it is necessarily defective," and thus the first element mentioned in *Ulmer,* "that there was

a defect," did not need to be proved.[2] *Seattle–First Nat'l Bank v. Tabert, supra* at 154. Later cases have impliedly limited *Tabert* to design defect cases. *Little v. PPG Indus., Inc.*, 92 Wn.2d 118, 122, 594 P.2d 911 (1979); *Estate of Ryder v. Kelly–Springfield Tire Co.*, 91 Wn.2d 111, 117, 587 P.2d 160 (1978); *Bernal v. American Honda Motor Co.*, 87 Wn.2d 406, 411, 553 P.2d 107 (1976). This 4–part test was also relied on in *Kimble v. Waste Systems Int'l, Inc.*, 23 Wn. App. 331, 595 P.2d 569 (1979), a case which involved the failure of the manufacturer to provide adequate warnings, which this court characterized as a "defect."

Wiseman argues this court should apply the 4–part test of *Tabert* and eliminate the requirement of unreasonable danger in this manufacturing defect case. In effect, he urges us to state the converse of *Tabert* as the law, namely, that if a product has a manufacturing defect, it must necessarily be unreasonably dangerous. We decline to do so. Although there is some validity in equating the two concepts in a design defect case, *see Seattle–First Nat'l Bank v. Tabert, supra* at 151, the connection between defect[3] in a product and unreasonable danger from the product assumes a dif-

---

[2]Wiseman urges we adopt the position of the California Supreme Court in *Cronin v. J.B.E. Olson Corp.*, 8 Cal. 3d 121, 501 P.2d 1153, 104 Cal. Rptr. 433 (1972), which requires a plaintiff need only show a product is defective and not that it is also unreasonably dangerous in order to recover. *See also Butaud v. Suburban Marine & Sporting Goods, Inc.*, 555 P.2d 42 (Alaska 1976); *Glass v. Ford Motor Co.*, 123 N.J. Super. 599, 304 A.2d 562 (1973). *Cronin* has been criticized by the commentators, *see* Wade, *On Product "Design Defects" and Their Actionability*, 33 Vand. L. Rev. 551, 557 (1980), for a perceptive discussion of this problem, and impliedly rejected by our Supreme Court in *Tabert, supra* at 152–54. *See also Kirkland v. General Motors Corp.*, 521 P.2d 1353 (Okla. 1974).

[3]Although the Restatement does not define defect, a product is in a defective condition when "at the time it leaves the seller's hands, [it is] in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." Restatement (Second) of Torts § 402A, comment *g* (1965). This definition invokes a balancing of the social utility of a dangerous product and the cost of eliminating the danger. Comment, *Products Liability—Strict Liability in Tort: Defect Need Not Render Product "Unreasonably Dangerous,"* 49 Wash. L. Rev. 231, 248 (1973).

ferent meaning in a manufacturing defect case. The consumer has a reasonable expectation of buying a product which is reasonably safe; if there is something in the design which does not meet that expectation, the design is necessarily defective. *Seattle–First Nat'l Bank v. Tabert, supra* at 154. However, if the design will meet the reasonable expectations of the buyer, but its manufacture is in some way defective, it is not necessarily unreasonably dangerous to the consumer.[4] Some products defectively manufactured are still reasonably safe for the consumer. A car with an inadequate heater is defective but not unreasonably dangerous; a defective toaster which always chars bread is not unreasonably dangerous; a defective television set which receives only half the channels because of frequency limitations is not unreasonably unsafe. Thus, in order for a product to be defective in a manufacturing sense, it must be "'in a condition not contemplated by the ultimate consumer, [and] which [is] unreasonably dangerous to him.'" *Bombardi v. Pochel's Appliance & TV Co.,* 10 Wn. App. 243, 246, 518 P.2d 202 (1973), citing Restatement (Second) of Torts § 402A, comment *g* at 351 (1965); *see Curtiss v. YMCA,* 82 Wn.2d 455, 511 P.2d 991 (1973). Thus, we hold the 5–part test, requiring proof of both defect and unreasonable danger, must be met by a plaintiff who seeks to prove a strict liability case based on a manufacturing defect, as opposed to a defective design.

Wiseman also challenges instruction No. 5, claiming it increased his burden of proof, as it required him to prove "that the defect was *the* proximate cause of the plaintiff's

---

[4]It has been argued the requirement—that the defect be the proximate cause of the injury—will prevent a minor, nondangerous defect from supporting a case based on strict liability in tort. Comment, *Products Liability—Strict Liability in Tort: Defect Need Not Render Product "Unreasonably Dangerous,"* 49 Wash. L. Rev. 231, 235 (1973). However, in *Ulmer v. Ford Motor Co., supra* at page 532, the court impliedly rejected this argument:

> [A]n instruction stating the rule according to Restatement (Second) of Torts § 402A (1965) should be given, rather than instruction No. 6, which does not make it clear that the manufacturer is liable only for defects which create an unreasonable risk of harm.

injuries and damages." (Italics ours.) Although we would have preferred the instruction to read "*a* proximate cause," this instruction repeats the language of the Restatement in setting forth the requirements of proof under section 402A, *see Ulmer v. Ford Motor Co., supra* at 535; *Bich v. General Elec. Co., supra* at 28, and is thus a correct statement of the law. Instructions must be read as a whole. *State v. Dana,* 73 Wn.2d 533, 536, 439 P.2d 403 (1968). Instruction No. 5, when read with other instructions,[5] allowed Wiseman to argue his theory of the case, was not misleading, and properly informed the trier of fact of the applicable law. *Levea v. G.A. Gray Corp.,* 17 Wn. App. 214, 224, 562 P.2d 1276 (1977). Therefore, this portion of instruction No. 5 was not error.

The judgment of the trial court is affirmed.[6]

McINTURFF, C.J., and GREEN, J., concur.

---

[5]Instruction No. 6:

"The term 'proximate cause' means *a* cause which, in a direct sequence, unbroken by any new independent cause, products [*sic*] the injury complained of and without which, such injury would not have happened.

"There may be one or more proximate causes of an injury." (Italics ours.)

[6]We note the Products Liability—Tort Law Reform Act, Laws of 1981, ch. 27, p. 85, may have some effect on cases brought after July 26, 1981, the effective date of the act.