[No. 11487-2-III.   Division Three.   April 27, 1993.]

*In the Matter of the Marriage of* ROBERT E. ZEIGLER, *Respondent, and* LINDA D. ZEIGLER, *Appellant.*

*Frank S. Lathrop* and *Lathrop & Winbaur,* for appellant.

*John P. Gilreath* and *Cone, Gilreath, Ellis, Cole & Korte,* for respondent.

SHIELDS, C.J. — In this marriage dissolution action between Robert E. Zeigler and Linda D. Summers (formerly Zeigler), the primary issue was whether Zeigler Insurance Agency, Inc. (the Agency) had any goodwill and, if so, its value. The court found the Agency had no goodwill but had a termination value. Ms. Summers appeals. We affirm.

The Zeiglers started the Agency in 1981, and each got an insurance license. Mr. Zeigler entered into an agency agree-

ment with State Farm Insurance Company, Inc.; State Farm designated Mr. Zeigler as its agent. The agreement was later amended to reflect the incorporation of the Zeigler Insurance Agency as a closely held corporation, with Mr. Zeigler as the sole stockholder.

The Agency was a "scratch" agency — one built from the ground up — and was a "captive" agency of State Farm. The State Farm agency agreement provided: all sales were limited to State Farm-approved products; all policyholder names, addresses, and information pertaining to the policies were trade secrets of State Farm; the Agency's leased computer system, software, and records were the sole property of State Farm; the Agency's book of policyholders belonged to State Farm; and the Agency could not assign or sell the book of policyholders to anyone. Mr. Zeigler controlled the organization of, and paid the expenses of, the Agency.

The State Farm agency agreement also provided for its termination: the Agency could retain its name, staff, internal procedures, and location, but it could not directly solicit State Farm policyholders for 1 year. The Agency could sell competing insurance to State Farm policyholders who applied on their own and could solicit insurance business from people who were not current State Farm policyholders. Compliance with these restrictions made Mr. Zeigler eligible for a termination payment from State Farm, computed at 20 percent of the commissions from the year preceding termination and payable over a 60-month period.

At trial, the testimony of Mr. Zeigler and Ms. Summers established the following undisputed facts: Mr. Zeigler was 52 years of age, was recovering from surgery for one aortic arch aneurism, and was under observation for another. He was very successful; his agency had been State Farm's most profitable agency in Washington for each of the prior 8 years. Ms. Summers testified Mr. Zeigler normally worked 10 to 11 hours a day. Mr. Zeigler testified he was still working 8 hours a day, including every Saturday and many Sundays, even after undergoing major heart surgery.

Mr. Zeigler introduced the State Farm agency relations packet, exhibit 4, which states:

> Information regarding names, addresses, and ages of policyholders [as well as most other information about policies] acquired or coming into your possession during the effective period of this Agreement . . . are trade secrets wholly owned by the [State Farm] Companies.

State Farm manager Timothy McCoy also testified State Farm protected its policyholder information as a trade secret.

Each party called an expert to testify about the goodwill of the Agency. Mr. Zeigler's expert was Professor Patrick O'Shaughnessy of Central Washington University, a certified public accountant (CPA) for 30 years. In his opinion, there was no goodwill; but if there was, its value was zero. Professor O'Shaughnessy determined that the contractual limitations placed on the Agency by State Farm deprived it of the benefits normally associated with goodwill. He noted Mr. Zeigler had no direct interest in State Farm, so under the circumstances, goodwill was an asset which State Farm owned and Mr. Zeigler merely developed.

Professor O'Shaughnessy testified he based his opinion on the factors enumerated in *In re Marriage of Fleege*, 91 Wn.2d 324, 588 P.2d 1136 (1979), and was familiar with the five methods of goodwill valuation in *In re Marriage of Hall*, 103 Wn.2d 236, 692 P.2d 175 (1984).[1] Of the accounting methods recommended in *Hall*, he concluded the capitalization of excess earnings method was best and based his opinion on it. He calculated a fair rate of return on the Agency's assets at about 15 percent. Professor O'Shaughnessy concluded Mr. Zeigler's salary was fair, considering how hard he worked. Using the Agency's corporate income tax returns, he found its net income after deducting Mr. Zeigler's salary did not approach the fair rate of return and concluded there

---

[1] These cases address the existence and valuation of goodwill in a professional practice, but they apply as well to commercial businesses. Whether the Zeigler Insurance Agency has goodwill does not depend on any distinction between professional practices or commercial businesses.

were no excess earnings. Thus, the value of any goodwill the Agency may have had was zero.

Ms. Summers' expert was Jean Pryor, a partner in the Moss Adams accounting firm who had been a CPA for 11 years. In her opinion the Agency had goodwill. She also based her opinion on the *Fleege* factors and *Hall* methods, and also used the capitalization of excess earnings approach to value the goodwill. She calculated a fair rate of return at about 10 percent because the Agency was a small, closely held corporation. Ms. Pryor concluded Mr. Zeigler's salary was more than fair since it was above the industry average. She made "normalizing adjustments" to include the amount of Mr. Zeigler's salary above the industry average in excess earnings. She calculated the Agency's total value at $303,376, subtracted the tangible assets of $72,698, and arrived at an intangible value, or goodwill, of $230,678.

The court held that the Agency had no goodwill. The court also held that any value the Agency had over and above its tangible assets consisted of the compensation payable on termination. It found the termination payments would be $2,711 per month for 60 months ($162,660) and ordered a qualified domestic relations order (QDRO) be prepared to divide the payments equally between the parties when they became payable.

## I

### Procedural Challenges to Appeal

Mr. Zeigler raises two procedural challenges to Ms. Summers' appeal. First, he contends her appeal should be dismissed because her opening brief did not set forth verbatim the challenged findings of fact. RAP 10.4(c); *Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 311, 752 P.2d 372 (1988). However, we may waive compliance with RAP 10.4(c) in order to serve justice. RAP 1.2(c). Mr. Zeigler has not shown he suffered prejudice; the challenged findings were identified in the opening brief by number and they are set forth verbatim in the reply brief; and we can proceed on the

merits. *Wiseman v. Goodyear Tire & Rubber Co.*, 29 Wn. App. 883, 884, 631 P.2d 976 (1981).

Second, he contends Ms. Summers' references to the memorandum opinion are improper. However, a party may refer to the trial court's memorandum opinion to explain or clarify the formal findings, so long as it does not contradict such findings. *Ferree v. Doric Co.*, 62 Wn.2d 561, 567, 383 P.2d 900 (1963). Ms. Summers' use of the memorandum opinion does not exceed these bounds.

## II
### GOODWILL IN THE AGENCY

The major issue in this case is whether goodwill exists in the Agency and if so, its value.

The court found the Agency had no excess earnings nor any goodwill, primarily because its success was due to Mr. Zeigler's personal earning capacity. Ms. Summers first contends the trial court erred by finding the Agency had no goodwill.

A goodwill issue is analyzed to determine (1) whether goodwill exists; and (2) if so, its value according to acceptable accounting methods. Goodwill is not earning capacity; rather, it is an attribute of a business or professional practice which supplements earning capacity. *Hall*, at 241-42. Goodwill represents the expectation of continued patronage based upon such intangibles as location, trade name, reputation, organization and established clients. *Hall*, at 239; *Fleege*, at 325; *In re Marriage of Lukens*, 16 Wn. App. 481, 483, 558 P.2d 279 (1976), *review denied*, 88 Wn.2d 1011 (1977).

Here, the court found Mr. Zeigler's income was a result of his skill, knowledge and hard work, or in other words, his earning capacity. The court found that the "location, reputation, office organization and Zeigler Agency insurance name do not necessarily enhance the earning capacity of [Mr. Zeigler]." The court clearly considered the relevant factors under

*Fleege,* and its conclusion is reasonable under the facts presented.

■ In this situation, the Agency's captive status means that any reasonable expectation of continued patronage is indistinguishably intertwined with the reputation and goodwill of State Farm. Mr. Zeigler is a State Farm agent operating out of his own office as an independent contractor. If Mr. Zeigler terminates his relationship with State Farm, he may retain his office and sell other companies' insurance, but he cannot solicit business from State Farm's existing policyholders. Whether they would then seek out another State Farm agent to take care of their insurance needs, or stay with Mr. Zeigler and ask him to find them a new insurer, is speculative. State Farm retains the vital rights to the policyholders and the stream of renewals from them. Because State Farm retains the expectation of continued public patronage, any goodwill attaches primarily to State Farm, not its captive agency. *See J.L. Cooper & Co. v. Anchor Sec. Co.*, 9 Wn.2d 45, 54-55, 113 P.2d 845 (1941).

■ Alternatively, Ms. Summers contends the trial court erred in valuing the goodwill at zero. The inquiry on appeal is limited to whether any substantial evidence supports the findings, even though other reasonable interpretations may appear. *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 712-13, 732 P.2d 974 (1987).

■ Both experts used the capitalization of excess earnings method to determine the value of goodwill; however, they disagreed on the appropriate fair salary and on the reasonable rate of return to be used in applying this method. Thus, their valuations were widely divergent. Faced with conflicting opinions, the court was entitled to rely on Professor O'Shaughnessy's zero valuation. Thus, if the court's determination that the Agency had no goodwill was error, it was harmless.

## III
### ATTORNEY FEES

Ms. Summers contends the trial court erred in not requiring Mr. Zeigler to help her pay attorney fees incurred in the

dissolution. She contends she received very little in the way of liquid assets, her monthly income is insufficient to cover her expenses, and she has had to borrow $15,000 to pay the fees.

■ The decision to award attorney fees in a dissolution action lies within the sound discretion of the trial court, based on the financial resources of both parties. RCW 26.09-.140. We will not overturn this decision absent a showing of an abuse of discretion. Ms. Summers has not made that showing.

The judgment is affirmed.

MUNSON, J., concurs.

SWEENEY, J. (dissenting) — The trial court concluded that Zeigler Insurance Agency, Inc., had no goodwill. Linda D. Summers (formerly Zeigler) appeals contending this conclusion was error. I agree and therefore respectfully dissent.

The trial court found that Robert E. Zeigler's income was. the result of his skill, knowledge, and hard work, or in other words his earning capacity. Majority, at 607. Implicit in this analysis, which is advanced by both the trial court and the majority, is that a finding of goodwill is therefore precluded. I disagree. The argument has previously been advanced and rejected. *See In re Marriage of Hall*, 103 Wn.2d 236, 241-42, 692 P.2d 175 (1984); *In re Marriage of Brooks*, 51 Wn. App. 882, 888, 756 P.2d 161, 79 A.L.R.4th 159, *review denied*, 111 Wn.2d 1021 (1988). The majority also advances the Zeigler Insurance Agency's status as a captive insurance agency as militating against a finding of goodwill. "[A]ny reasonable expectation of continued patronage is indistinguishably intertwined with the reputation and goodwill of State Farm." Majority, at 608. Again, I disagree.

Goodwill is simply the expectation of continued public patronage — nothing more and nothing less. *Hall*, at 239. "Among the elements which engender goodwill are continuity of name, location, reputation for honest and fair

dealing, and individual talent and ability." *In re Marriage of Fleege*, 91 Wn.2d 324, 325-26, 588 P.2d 1136 (1979). Most, if not all, of these factors are present in the Zeigler Insurance Agency. Even if the agency were to terminate its association with State Farm, the agency still maintains its name, staff, internal procedures and location, all of which are likely to assure public patronage.

I would reverse the trial court's conclusion that there is no goodwill and remand for reconsideration of the value of the goodwill.