In re the MARRIAGE OF Sharon GRAFF, Appellee and Cross–Appellant,

and

Albert Graff, Appellant and Cross–Appellee.

No. 93CA1070.

Colorado Court of Appeals, Div. V.

Dec. 15, 1994.

Rehearing Denied Feb. 9, 1995.

Certiorari Denied Sept. 25, 1995.

Paul J. Keohane, Canon City, for appellee and cross-appellant.

Drummond, Dougherty & Schwartz, P.C., Donald G. Drummond, Brian J. Dougherty, Pueblo, for appellant and cross-appellee.

Opinion by Judge TAUBMAN.

In this dissolution of marriage action, Albert Graff (husband) appeals and Sharon Graff (wife) cross-appeals from the permanent orders concerning property division and security for maintenance. We affirm in part, reverse in part, and remand with directions.

Husband and wife had been married for approximately 34 years when the decree of dissolution was entered. The primary issue for the court's determination at permanent orders was characterization of husband's interest in a State Farm insurance agency bearing his name.

Wife asserted that the interest constituted property, and her expert valued the business at $131,500, with goodwill comprising $129,500 of that value. The expert used a cash flow method that involved calculating a weighted average of net income for the three years prior to the decree and discounting that figure. He testified husband's agency was a valuable property right because, among other factors, husband set his own hours, decided the location of his office, hired and fired his own employees and set their salary, selected and purchased his own supplies, was characterized in his State Farm contract as an independent contractor, and reported his income as that of a business on Schedule C of his tax return.

Husband's expert testified that there was no property interest that could be identified in the Al Graff Insurance Agency. He based this conclusion upon the assertions that husband was a "captive agent" whose rights were defined by his contract and that the status of independent contractor was solely for the convenience of State Farm. In this expert's view, the traits that were identified as factors supporting the determination that goodwill existed were equally compatible with the traits of a good employee. He emphasized the fact that husband was unable to sell his rights to the State Farm contract and could not assign, exchange, divide, or mortgage the value represented by his ability to generate income.

The trial court found that the restrictions on transfer of the agency did not preclude the existence of goodwill, particularly since there was no evidence that any transfer or termination was contemplated. It concluded that husband's interest in the agency constituted a property interest and determined that the valuation method used by wife's expert was appropriate and had previously been approved by our courts.

Accordingly, the trial court determined the value of the goodwill in husband's State Farm agency to be $129,500. It divided this value equally between the parties, with husband to pay wife her share over a 10–year period at the rate of $539.58 per month. The trial court then subtracted this amount from husband's income and added it to wife's income for purposes of determining maintenance.

I.

Husband first contends that the trial court erred in determining that his interest in the State Farm agency consisted partially of goodwill. We disagree.

Goodwill has long been accepted as an attribute of a business, trade, or profession. It has no existence as property in and of itself, but is an incident of a continuing business having locality or name. *Lerner v. Stone*, 126 Colo. 589, 252 P.2d 533 (1952).

■ Goodwill reflects not simply a possibility of future earnings, but a probability based on existing circumstances. Further, goodwill is a property or asset which supplements the earning capacity of another asset, a business, or a profession, and therefore, it is not the earning capacity itself. *In re Marriage of Bookout,* 833 P.2d 800 (Colo. App.1991).

■ That goodwill may be difficult to value, is elusive in nature, and is not easily marketable, are not proper reasons to disregard it in the valuation of the marital estate. *In re Marriage of Martin,* 707 P.2d 1035 (Colo.App.1985).

Here, as in *In re Marriage of Martin,* the parties' experts disagreed on whether husband's business had goodwill associated with it. Furthermore, as in that case, the question whether goodwill existed in the husband's particular enterprise here was inseparable from the question of the valuation of that intangible asset. Thus, the trial court could properly accept wife's expert's opinion over that of husband's expert regarding the existence of goodwill in the State Farm agency.

■ Furthermore, the value of goodwill is not necessarily dependent upon what a willing buyer would pay for such goodwill; rather, the important consideration is whether the business has a value to the spouse over and above the tangible assets. *In re Marriage of Martin, supra.* Goodwill may be valued even though an agreement, as here, prevents the sale of an agency. *See In re Marriage of Keyser,* 820 P.2d 1194 (Colo. App.1991).

■ Finally, a valuation based on past earnings represents the advantage currently possessed by the business as shown by its historical ability to earn income in excess of that which would be earned if the owner had invested in tangible property and leased it to other businesses. *In re Marriage of Bookout, supra.*

To the extent husband relies on the majority opinion in *In re Marriage of Zeigler,* 69 Wash.App. 602, 849 P.2d 695 (1993), we do not find that opinion persuasive. Insofar as the majority there held that it was within the trial court's discretion to rely on one expert's opinion that a State Farm agency had no goodwill, the trial court here similarly exercised its discretion, with record support, in concluding that husband did have goodwill attached to his State Farm agency.

To the extent that the *Zeigler* majority held as a matter of law that any goodwill attached to a local State Farm insurance agency was indistinguishably intertwined with the reputation and goodwill of State Farm, we disagree with that conclusion.

Here, the trial court considered evidence regarding the constraints on husband's agency imposed by State Farm, but also found that he controlled his business expenses, that he had stated his interest as business ownership with the Internal Revenue Service, that the net income of the business had increased substantially under husband's ownership, and finally, that husband had no plans to discontinue his relationship with State Farm. Under these circumstances, the trial court could properly determine that there was goodwill attached to husband's ownership of the State Farm agency. *See In re Marriage of Zeigler, supra* (Sweeney, J., dissenting).

Husband also asserts that the opinion of wife's expert was not reliable because it was based upon a mistaken reading of the *In re Marriage of Martin* case. However, we have reviewed the conflicting testimony of the experts and conclude that the value accepted by the court was based upon valuation methods that have been accepted by our courts.

## II.

Husband also contends that the trial court erred in imposing an acceleration clause, penalty clause, and interest on the promissory note evidencing his obligation to pay wife her one-half of the interest in the business goodwill. We agree in part.

■ Husband asserts that the penalty clause requiring him to pay 8% interest on the entire amount of the note if he is ten days late is unconscionable, since it could transform an interest free promissory note to one costing him more than $29,000 in interest

payments. However, in our view, the trial court's decision to impose interest only after husband becomes ten days late on any payment is encompassed within its discretion to provide for interest on a promissory note in the first instance. *See In re Marriage of Lucas,* 631 P.2d 1175 (Colo.App.1981). Additionally, husband does not contend that the 8% interest rate is unreasonable.

Furthermore, we note that husband concedes that an acceleration clause triggered upon sale of the property securing the note is reasonable and agrees that two months is a reasonable period of time before which default is declared.

■ However, we agree with husband that acceleration of the note in the event that he ceases to operate his business at its current address is an unreasonable restriction upon his ability to operate the business. *See generally In re Marriage of Fischer,* 834 P.2d 270 (Colo.App.1992) (covenant not to compete is void unless it fits into one of statutory exceptions). Accordingly, we reverse that portion of the permanent orders imposing such provision as an obligation of the promissory note, and remand for entry of an order directing correction of the note.

### III.

The parties agree that a qualified domestic relations order (QDRO) concerning the division of the extended termination payments due under husband's contract with State Farm was inserted in the final order by mistake. Accordingly, this matter should be reconsidered by the trial court on remand under its continuing jurisdiction to modify the order relative to the payments for goodwill of the business.

### IV.

■ Husband also contends that the trial court erred in requiring him to maintain a $100,000 life insurance policy to secure future maintenance payments. We are not persuaded.

At the time of decree, the parties had been married for approximately 34 years, during which time, wife had been a homemaker. In order to maintain the standard of living that she had enjoyed during the marriage, the trial court awarded wife $2,000 per month maintenance until remarriage, death, or further order of court.

■ Husband acknowledges that the court has the power to order a spouse to purchase life insurance to secure the obligation to pay maintenance. *See In re Marriage of Koktavy,* 44 Colo.App. 305, 612 P.2d 1161 (1980); § 14–10–122(2), C.R.S. (1987 Repl.Vol. 6B). However, he argues that insurance should not be required here because the court did not expressly order that maintenance continue beyond the death of husband and because the compelling circumstances of *Koktavy.* are not present in this case.

We reject husband's contention that the order requiring him to obtain life insurance to secure future maintenance payments was contrary to the requirements of § 14–10–122(2) because neither the decree nor the final order expressly provided that the obligation to pay future maintenance was not terminated upon the death of husband. Inasmuch as the trial court's order regarding life insurance to secure future maintenance payments immediately followed the paragraph of the final order concerning maintenance payments, we regard it as expressly requiring maintenance payments through the life insurance policy proceeds after husband's death.

■ In our view, it was within the court's discretion under *Koktavy* to order that husband maintain certain life insurance to insure that a minimum amount of maintenance would be received by wife even though it did not otherwise order that the support continue beyond the husband's death. Furthermore, we do not read *Koktavy* to suggest that the compelling circumstances present there are required before a court may require either that life insurance be maintained or that maintenance continue beyond the death of the payor.

Husband further asserts that the trial court abused its discretion by ordering him to maintain the life insurance policy because no evidence had been presented regarding

the cost of maintaining such insurance or to what extent the premium payments could increase in the future given his age. However, since he raises this issue for the first time on appeal, we refuse to address it here. *Platte Valley Savings v. Crall,* 821 P.2d 305 (Colo.App.1991).

## V.

■ In her cross-appeal, wife asserts that she is entitled to any increase in value of certain assets awarded to her from the date of decree, October 1991, to the date the permanent orders were entered in May 1993. We disagree.

Section 14–10–113(5), C.R.S. (1987 Repl. Vol. 6B) provides that property shall be valued as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree. Here, the decree was entered in October 1991. Accordingly, that was the statutorily required date for valuation.

In addition, in denying wife's motion for clarification, the trial court specifically indicated that when it had awarded certain assets to the parties, it did not intend to divide as marital property the increases in the value of the marital property that resulted after the date of the decree.

Furthermore, in denying wife's motion for clarification, the trial court also rejected her contention that it had ordered the distribution of specific assets, such as a certificate of deposit, rather than payment of the value of those assets. This determination was well within the trial court's discretion. Accordingly, we find no error.

The portions of the judgment providing for acceleration of the promissory note in the event husband does not operate his business at the current location and requiring a QDRO are reversed, and the cause is remanded to the trial court for amendment of the note and reconsideration of the requirement for a QDRO. In all other respects, the judgment is affirmed.

RULAND and BRIGGS, JJ., concur.