[No. 14569-7-III.   Division Three.   January 7, 1997.]

GEORGE L. ANDERSON, ET AL., *Petitioners*, v. VALLEY
QUALITY HOMES, INC., *Respondent*.

*Richard T. Cole* and *Cone, Gilreath, Ellis, Cole & Korte,* for petitioners.

*Theodore A. Roy* and *Roy & Pell,* for respondent.

SCHULTHEIS, J. — RCW 43.22.440 requires that the Department of Labor and Industries establish minimum standards and rules for the installation of mobile homes, and expressly provides "failure to remedy any breach of the standards and rules so established, upon adequate notice and within a reasonable time, is a violation of the Consumer Protection Act, chapter 19.86 RCW and subject to the remedies provided in that chapter." Valley Quality Homes, Inc., violated building site and foundation standards when it installed George and Kathryn Anderson's mobile home and did not remedy the violations. The District Court concluded Valley violated the Consumer Protection Act (CPA) and awarded the Andersons treble damages and attorney fees. The Superior Court modified the judgment after it concluded (1) RCW 43.22.440 does not create a "per se" CPA violation and (2) the Andersons did not establish a public interest impact, a necessary element of a private CPA action required by *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986). We granted discretionary review and, for the reasons discussed below, we reverse the Superior Court and reinstate the judgment of the District Court.

In August 1991 the Andersons bought a mobile home from Valley after company salesman Robert Nichols approved the staked building site prepared by Mr. Anderson and guaranteed delivery and installation by October 26, 1991. Valley delivered the unit to the site in two pieces on October 25, but placed one-half of it on the prepared pad and one-half of it off the pad. Despite Mrs. Anderson's

request that it be properly located, the next day Valley installed the mobile home half on and half off the pad, on inadequate perimeter footings, then later finished the interior and connected water and sewer lines. The improper installation caused uneven settling, resulting in cracked walls, and violated both the manufacturer's installation manual and state regulations.

The Andersons filed this lawsuit in June 1993 in District Court. They sought a $5,000 refund for Valley's failure to have the installation completed by October 26, costs of correcting the improper installation, damages for some uncorrected deficiencies in the home, and treble damages and attorney fees under the CPA. The court found Valley substantially complied with the delivery/installation deadline, so a refund was not warranted, but Valley was liable for the $1,400 cost of installing perimeter footings below the frost line in conformance with regulations and for the $140 cost of repairing a defective shower drain. The court concluded Valley's violations of the Washington Administrative Code (WAC) regulations automatically constituted a violation of the CPA under the express language of RCW 43.22 and, moreover, that the Andersons established all five *Hangman Ridge* elements of a private CPA action. The court trebled the Andersons' $1,540 actual damages and awarded them $4,620, plus $5,666.55 in attorney fees and $1,643.22 in costs, for a total judgment of $11,929.77.

Valley appealed the judgment to the Superior Court. That court found the facts are not in dispute and Valley violated the WAC regulations at issue,[1] but it concluded the Andersons did not establish their CPA claim. The court first addressed the "per se" violation issue, stating:

*Hangman Ridge* dispels the confusion surrounding the per se

---

[1]Both courts found RCW 43.22.440 applies in this case, and that Valley violated requirements of WAC 296-150B, the chapter implementing the provisions of RCW 43.22.440 regarding the installation of mobile homes. Valley asserts this court should review those conclusions de novo, but it does not actually contend either conclusion is wrong. Nor could it do so in good faith. Both conclusions are amply supported by the record and they are not at issue on review.

language by clarifying its various meanings. "Per se" may indicate either an act that, by statutory declaration, satisfies the unfair and deceptive act or practice element, or an act that satisfies, by statutory declaration, the public interest element. RCW 43.22.440(3) utilizes no special language whatsoever to indicate violations of Chapter 43.22 RCW are either unfair and deceptive acts or practices or public interest impact violations. Therefore, Valley Quality Homes, Inc.'s actions as found by the court are not per se violations. Because there were no per se violations, the burden was on Andersons to prove the elements of the Consumer Protection Act as set out in *Hangman Ridge.*

(Footnotes omitted.)

The court then agreed the Andersons established four of the *Hangman Ridge* elements, but it found they did not establish the fifth. The court held there was no factual basis for the trial court's conclusion that Valley's unfair and deceptive acts and practices, in light of the number of homes it sells, affect the public interest. The court limited the Andersons' award to actual damages and remanded for a determination of the prevailing party for purposes of awarding fees under the terms of the contract. Our commissioner granted discretionary review.

The primary issue before us is whether the Superior Court erred as a matter of law when it held that RCW 43.22.440(3) does not establish a per se violation of the CPA. We conclude it did.

■ In *Hangman Ridge*, the Supreme Court identifies five elements, all statutorily based, that a plaintiff must prove in order to prevail in a private CPA action: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) which affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) causation. The court then describes the elements and various ways to establish them.

■ One way a plaintiff may establish the first two elements is by showing that the alleged conduct constitutes a per se unfair trade practice. The court explains "[a] per se

unfair trade practice exists when a statute [that] has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated" and gives examples of such statutes: RCW 19.09.340 (charitable solicitations), RCW 19.105.500 (camping clubs), RCW 19.102.020 (chain distribution schemes), RCW 19.110.170 (business opportunities), RCW 18.28.185 (debt adjustment), RCW 18.39.350 (embalming), RCW 58.19.270 (land development), RCW 63.10.050 (consumer leases), and RCW 64.36.170 (time-share offerings). *Hangman Ridge*, 105 Wn.2d at 786-87.

The court notes the Legislature, not the court, is the appropriate body to establish the interaction between other statutes and the CPA by declaring a statutory violation to be a per se unfair trade practice. Therefore, the court confirms "*[when] the Legislature specifically defines the exact relationship between a statute and the CPA, this court will acknowledge that relationship.*" *Id.* at 787 (emphasis added).

■ A plaintiff may also satisfy per se the third element, a public interest showing, by establishing the defendant violated a statute containing a specific legislative declaration of public interest impact. Examples of such statutes include RCW 46.70.005 ("The legislature . . . declares that the distribution and sale of vehicles . . . vitally affects . . . the public interest . . ."), RCW 46.80.005 (public interest in sales of motor vehicle parts), and RCW 48.01.030 (public interest in the business of insurance). The court "emphasized that when a statute containing a legislative public interest pronouncement can be shown to have been violated, only the public interest requirement is satisfied per se. The other four elements of a private CPA action must be separately established." *Hangman Ridge*, 105 Wn.2d at 791-92.

The court then discusses the confusion resulting from different uses of the "per se" terminology in the consumer protection context:

Indeed, there have been three different per se uses. First,

there has been and continues to be a per se public interest impact, as outlined above, which establishes only the element of public interest. Second, as discussed earlier in this opinion, there is a legislatively declared per se unfair trade practice which establishes only the first two elements of a CPA action. Finally, the term "per se violation" has been broadly used to refer to actions in which either the public interest element or the "unfair or deceptive act" and "in trade or commerce" elements are met per se. The term "per se violation" is thus imprecise. It should be replaced by "per se public interest" or "per se unfair trade practice", depending upon which element or elements are satisfied per se.

*Id.* at 792. The Superior Court interpreted this part of the *Hangman Ridge* opinion to mean that RCW 43.22.440(3) does not mean what it seems to say: an unremedied violation of the standards established under its authority is per se a violation of the CPA, automatically entitling the injured party to CPA remedies. We find no support for that interpretation.

■ The Supreme Court's declaration that the term "per se violation" is imprecise results from its review of numerous actions in which only some elements were satisfied per se by legislative declaration. Nothing in *Hangman Ridge* suggests the Legislature cannot declare that the unremedied violation of a particular statute is, in and of itself, also a violation of the CPA. But not one of the statutes listed in *Hangman Ridge* contains a clear cut declaration that its violation is also a violation of the CPA.[2]

---

[2]We have found very few other statutes containing similar wholesale declarations: RCW 18.44.145 prohibits escrow referral fees and provides in subsection (3) "A violation of this section constitutes a violation of [the CPA], and any person harmed in his or her business or property is entitled to the remedies provided under [the CPA]"; RCW 19.118.041, Washington's lemon law, provides in subsection (3) "a violation of any responsibilities imposed upon dealers under this chapter is a per se violation of [the CPA]"; RCW 19.130.060 provides "Violation of this chapter [telephone buyers' protection act] constitutes a violation of [the CPA]"; and RCW 80.36.400 prohibits the use of an automatic dialing device for commercial solicitation and provides in subsection (3) "A violation of this section is a violation of [the CPA]," but it also has a separate public interest declaration. No published opinion interprets any of these statutes or RCW 43.22.440.

Compare the language of the statute at issue in this case with the language of those listed by the *Hangman Ridge* court (and by Valley) as examples of statutes establishing a per se unfair trade practice:

- RCW 19.09.340: "(1) The commission by any person of an act or practice prohibited by this chapter is hereby declared to be an unfair act or practice or unfair method of competition in the conduct of trade or commerce for the purpose of application of the [CPA]."

- RCW 19.105.500: "For the purposes of application of the [CPA], any material violation of the provisions of this chapter shall be construed to constitute an unfair or deceptive act or practice or unfair method of competition in the conduct of trade or commerce."

- RCW 19.102.020: "Any violation of this chapter shall be construed for purposes of the application of the [CPA] to constitute an unfair or deceptive act or practice or unfair method of competition in the conduct of trade or commerce."

- RCW 19.110.170: "Any violation of this chapter is declared to be an unfair act or practice or unfair method of competition in the conduct of trade or commerce for the purpose of application of the [CPA]."

- RCW 18.28.185: "A violation of this chapter constitutes an unfair or deceptive act or practice in the conduct of trade or commerce under [the CPA]."

- RCW 18.39.350: "Any such violation [of this chapter] constitutes an unfair practice under [the CPA] . . . ."

- RCW 58.19.270: "A violation of this chapter constitutes an unfair or deceptive act or practice or unfair method of competition in the conduct of trade or commerce for the purpose of . . . the [CPA]."

- RCW 63.10.050: "A violation of this chapter is an unfair or deceptive act or practice in trade or commerce and an unfair method of competition for the purpose of applying the [CPA]."
- RCW 64.36.170: "Any failure to comply with this chapter constitutes an unfair and deceptive trade practice under [the CPA]."

And compare it with those listed by the *Hangman Ridge* court as examples of statutes establishing a per se public interest impact:

- RCW 46.70.005: "The legislature . . . declares that the distribution and sale of vehicles . . . vitally affects . . . the public interest . . . ."
- RCW 46.80.005: "The legislature . . . declares that the distribution and sale of vehicle parts . . . vitally affects . . . the public interest . . . ."
- RCW 48.01.030: "The business of insurance is one affected by the public interest . . . ."

And, finally, compare it with the statute cited by the Superior Court as one clearly designating it to affect the public interest and constituting a violation of the CPA:

- RCW 18.27.350: "The consumers of this state have a right to be protected from unfair or deceptive acts or practices when they enter into contracts with contractors. The fact that a contractor is found to have committed a misdemeanor or infraction under this chapter shall be deemed to affect the public interest and shall constitute a violation of [the CPA]."[3]

---

[3]Other statutes enacted after the *Hangman Ridge* opinion also contain specific language identifying the element being satisfied per se and a declaration that the violation is a violation of the CPA, e.g.: RCW 46.70.310 provides "Any violation of this chapter [unfair business practices — dealers' licenses] is deemed to affect the public interest and constitutes a violation of [the CPA]," and RCW 48.96.060 provides "Failure to comply with the provisions of this chapter [motor vehicle service contracts] is an unfair method of competition and an unfair or deceptive act or practice in the conduct of a trade or commerce, as specifically contemplated by RCW 19.86.020, and is a violation of the [CPA]."

██ The statute at issue here is worded differently. It is a court's job, when interpreting a statute, to ascertain and give effect to the Legislature's intent as expressed in the plain language of the statute. *State v. Wilbur*, 110 Wn.2d 16, 18-19, 749 P.2d 1295 (1988). Here, the Legislature defined the exact relationship between violation of mobile home installation regulations and the CPA: an unremedied violation of the former *is* a violation of the latter that entitles the injured mobile home owner to CPA remedies. *Hangman Ridge* requires recognition of that relationship.

The secondary issue before us is whether the record supports the District Court's conclusion that Valley's deceptive acts impacted the public interest. The Superior Court rejected that conclusion for the following reason:

> In so concluding, the lower court determined the alleged acts were committed in the course of Valley Quality Homes, Inc. business, and were a part of a pattern of generalized course of conduct. The lower court did not find, *nor was there evidence from which to find, however, that there were repeated acts committed prior to the act involving the plaintiffs, or that there was a real and substantial potential for repetition of Valley Quality Homes, Inc. conduct after the act involving the plaintiffs, or that the act complained [of], involving a single transaction, was one likely to involve or affect many consumers.* While the guidelines for determining whether the public interest is impacted for purposes of meeting the *Hangman Ridge* element is a nonexclusive list of guidelines to help the trier of fact determine whether the element is met, here, *there is no evidence whatsoever [that] the Valley Quality Homes, Inc. practice of preapproving sites for mobile homes prior to sale and their installation thereafter of mobile homes sold ever harmed any other customer or in the future had the potential of harming any other customer or that any other consumer was affected or [was] likely to be affected by its present practice.* The trier of fact may not engage in speculation. Thus, this court concludes there is no showing of public interest impact under the *Hangman Ridge* test and, therefore, no violation of the Consumer Protection Act.

(Citations omitted, emphasis added.)

The Superior Court was mistaken. In its memorandum decision, the District Court performed the analysis required by *Hangman Ridge* and explained why it found Valley's conduct affects the public interest:

> **(4) The act or practice affects the public interest.** . . . [T]he court finds that the sale [in] this case was a consumer transaction and that the following "non-per se" factors are present and sufficient to establish public interest: (1) the acts were committed in the course of the defendant's business; (2) the acts were part of a pattern or of a general course of conduct; (3) repeated similar acts were committed prior to the act involving the plaintiff; (4) there is a real and substantial potential for repetition of the seller's conduct in the future.

(Footnotes omitted.) In two footnotes, the court gives its factual basis for the above:

> The evidence presented by the seller established to the court's satisfaction that the seller (at least in the case of rural installations) routinely approves the proposed site prior to the entering into any contract for the sale of a mobile home. The seller also convinced the court that it (and the entire mobile home industry) always utilizes a contract with boiler plate language which places the burden of proper site preparation upon the purchaser. The court specifically finds the practice of the seller approving the site preparation prior to a sale and then attempting in the contract to shift the burden of site preparation to the purchaser to be unfair, immoral, unethical, oppressive, and unscrupulous, and a practice which causes substantial injury to the purchaser. The court further finds, based on the testimony offered by the seller, that these acts or practices are routinely committed by the seller.

and:

> Even absent the explicit representations made by the seller's salesman found in this case, the court would find extremely troublesome the practice of the seller contracting to install a mobile home and then attempting (in the same contract) to shift the burden of proper installation to the purchaser. At the least, fairness requires that before the seller is allowed to

shift the burden of proper installation to the purchaser that the seller provide explicit information (in the form of the regulations **and** the instruction manual) **before** the contract is signed.

The court's memorandum findings are supported by the record. Valley salesman Robert Nichols testified Valley management required its salesmen to physically go look at the site when finalizing a mobile home sale. He looked at the Andersons' site and assured them it was as good as concrete, but the contract was a standard form with boiler plate language placing the responsibility of site preparation on the buyers. In the three years he worked for Valley, the company never had a policy requiring installation of perimeter footings below the frost line and he did not think the county required it then, either. The frost line issue had arisen once before: a mobile home he sold for delivery in Douglas County was installed without sunken footings, and the inspector advised them there was "some sort of a code that said we had to go down below the frost line. But when the smoke cleared they did not require us to do that on that particular house."

Valley part owner Robert Standfill, who was in charge of the installation, testified he had set up "a lot" of mobile homes in the area (approximately 20 in Kittitas County before the Andersons'), had never set the perimeter footings below the frost line, and had never had any problems. He knew the Valley setup manual required it and he knew the WACs required it, but the state "never enforced it." When he arrived at the site, he observed it was not properly prepared, but he did not say anything to the Andersons.

The District Court's findings of fact and conclusions of law are not as comprehensive as its memorandum opinion, but because the memorandum opinion does not contradict the formal findings, we may use it to clarify and explain them. *In re Zeigler*, 69 Wn. App. 602, 607, 849 P.2d 695 (1993). Taken together, they provide adequate support for the District Court's conclusion that Valley's

deceptive acts (regularly preapproving the buyer's site as a sales inducement then failing to ensure it was in fact appropriate and trying to shift responsibility by contract, and failing to comply with or ensure compliance with installation requirements of its own manual and/or WAC 296-150B) affect the public interest. Despite its knowledge of the potential damaging effects of frost heave on improperly installed mobile homes, Valley had been engaged in an ongoing practice of ignoring its guidelines as well as state requirements clearly meant to protect purchasers. It regularly induced sales by assuring purchasers of the adequacy of their sites, then used a contract clause to place on them the responsibility for any future problems should they arise. That was the way Valley did business, and it had the potential of negatively impacting a sizeable portion of the mobile home buying public.

We award the Andersons reasonable attorney fees, conditioned on their compliance with RAP 18.1(c). RCW 19.86.090; RCW 43.22.440(3); *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 170, 795 P.2d 1143 (1990).

We reverse the judgment of the Superior Court and reinstate the judgment of the District Court.

SWEENEY, C.J., and THOMPSON, J., concur.

Review denied at 132 Wn.2d 1002 (1997).