706 A.2d 249

JOYCE C. SEILER, PLAINTIFF–RESPONDENT/CROSS–
APPELLANT, v. ERSEL G. SEILER, JR., DEFEN-
DANT–APPELLANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 10, 1997—Decided February 23, 1998.

Before Judges MUIR, Jr., CUFF and STEINBERG.

*Archer & Greiner,* attorneys for appellant/cross-respondent (*Thomas J. Hurley,* on the brief).

*Ulrichsen, Amarel & Eory,* attorneys for respondent/cross-appellant (*John S. Eory,* on the brief).

The opinion of the court was delivered by

CUFF, J.A.D.

This appeal and cross-appeal arise out of a final judgment of divorce. Defendant, Ersel G. Seiler, Jr., claims that the trial judge erred in establishing the amount of alimony and the amount of life insurance that he must maintain. He also contests a retroactive increase in his *pendente lite* support obligation, the allocation of credits for assets taken by his former wife and his gambling losses, and an assessment of one-half of his wife's counsel fees. He also asserts that his former wife should have

been obliged to refinance the mortgage on the marital home. On her cross-appeal, plaintiff Joyce C. Seiler contests the failure of the trial judge to recognize any goodwill attributable to defendant's business and to determine a value of that goodwill.

After a thorough review of the record, the applicable law, and the arguments of the parties, we conclude that defendant's contentions concerning the amount of life insurance, the allocation of credits for assets taken and gambling losses, the increased *pendente lite* obligation, the mortgage refinance, and counsel fees are clearly without merit and an opinion would have no precedential value. *R.* 2:11–3(e)(1)(E). We discuss the remaining two issues: the amount of alimony and the failure to recognize goodwill, addressing the alimony issue first.

[**At the request of the court, only Point II merits publication, and, therefore, Point I has been omitted**].

## II

In her cross-appeal, plaintiff argues that there is goodwill associated with defendant's insurance agency which is an asset subject to valuation and equitable distribution. Defendant contends that the goodwill is an asset of the employer, not his agency.

Defendant and three other agents opened an Allstate insurance agency in Marlton in 1986. It is undisputed that defendant is an employee of Allstate. He represents Allstate exclusively. His compensation is governed by an agent compensation agreement with Allstate. Pursuant to the agreement, all premiums collected by defendant are treated as in trust for Allstate. Premiums are remitted to Allstate without any deduction for commission or expenses. The accounts are owned by Allstate rather than defendant. Defendant does not have a "book of business" which he can sell.

A company known as Payrolling Partners, Inc. hires and fires all defendant's employees, with Allstate approval. Defendant may hire or fire an employee only with the approval of Payrolling

Partners and Allstate may direct defendant to terminate an employee. Defendant establishes the base compensation rate of some employees, such as the receptionist. Defendant is paid by Allstate and he receives a Form W–2 from Allstate.

The Ersel Seiler agency is part of Allstate's neighborhood office program. Defendant receives an allowance for expenses from Allstate which is pegged to the agency's sales. He can use the allowance in any way he chooses. Because the allowance does not cover all expenses, defendant pays the difference from his compensation. For example, he has paid some educational expenses for some employees. Allstate owns all of the office equipment, including furniture and most of the computers. Allstate assigns the phone number and pays for and maintains the sign for the agency. Allstate designs and pays for all advertisements.

Judge Campbell acknowledged that goodwill existed. However, he also found that defendant was an employee of Allstate and the goodwill was an asset of Allstate, his employer. We agree.

Goodwill associated with a business is an asset distributable upon dissolution of a marriage. *Dugan v. Dugan,* 92 *N.J.* 423, 432–33, 457 *A.*2d 1 (1983). When future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value. *Id.* at 433, 457 *A.*2d 1. "In a broad sense goodwill includes a whole host of intangibles including the quality of management, the ability of the organization to produce and market efficiently, and the existence and nature of competition." *Id.* at 430, 457 *A.*2d 1. In *Dugan,* the Court held that an attorney's goodwill in his exclusively-owned professional corporation is property subject to equitable distribution, despite the fact that ethical considerations prevented the lawyer from selling his practice. *Id.* at 444, 457 *A.*2d 1; *see also Piscopo v. Piscopo,* 232 *N.J.Super.* 559, 565, 557 *A.*2d 1040 (App.Div.), *certif. denied,* 117 *N.J.* 156, 564 *A.*2d 875 (1989) (professional entertainer's goodwill attributable to his celebrity status is an asset subject to equitable distribution).

Goodwill as applied to an insurance business has been defined as

[T]he faith which the manager of a business wins from the public and the probability that old customers will continue their patronage. (citation omitted) It comprises those advantages which may inure to the purchaser from holding himself out to the public as succeeding in an enterprise which had been conducted in the past with the name and repute of his predecessor.

[*J.L. Cooper & Co. v. Anchor Secs. Co.*, 9 *Wash.*2d 45, 113 *P.*2d 845, 849 (1941) (citation omitted).]

Whether the goodwill generated by a manager of a "captive insurance agency" is an asset of the manager or of the insurance company which the manager represents has not been addressed in New Jersey. Two other jurisdictions have addressed similar questions, with opposite results.

In *In re Marriage of Zeigler*, 69 *Wash.App.* 602, 849 *P.*2d 695, 696 (1993), the husband was a "captive agent" of State Farm Insurance Company. The husband's agreement with State Farm provided that all sales were limited to State Farm approved products, all policyholder names and information pertaining to the policies were trade secrets of State Farm, the agency's leased computer system, software, and records were the sole property of State Farm, the agency's book of policyholders belonged to State Farm, and the agency could not assign or sell the book of policyholders to anyone. *Ibid.* The husband controlled the organization of and paid the expense of the agency. *Ibid.* The agreement also contained a no-compete clause. *Ibid.*

The court concluded that "the Agency's captive status means that any reasonable expectation of continued patronage is indistinguishably intertwined with the reputation and goodwill of State Farm." *Id.* at 698. Because State Farm retained the vital rights to the policyholders and the stream of renewals from them, any goodwill attached primarily to State Farm, not its captive agent. *Ibid.* Thus, there was no goodwill in the Agency to equitably distribute. *Ibid.*

The Colorado Court of Appeals faced a similar situation in *In re the Marriage of Graff*, 902 *P.*2d 402, 405 (Colo.Ct.App.1994), and explicitly disagreed with *Zeigler*. *Graff* also involved a State Farm agency run by the husband. *Id.* at 404. The husband set

his own hours, decided the location of his office, hired and fired his own employees and set their salary, selected and purchased his own supplies, was characterized in his State Farm contract as an independent contractor, and reported his income as that of a business on Schedule C of his tax return. *Ibid.* The husband was unable to sell his rights to the State Farm contract. *Ibid.* The court found that the restrictions on the transfer of the agency did not preclude the existence of goodwill. *Id.* at 405. Despite the restrictions on the husband's agency, the facts that he controlled his business expenses, that he had stated his interest as a business ownership with the Internal Revenue Service, that the net income of the business had increased substantially under the husband's ownership, and that the husband had no plans to discontinue his relationship, supported the trial court's finding that the agency had goodwill. *Ibid.*

Despite *Graff's* criticism of *Zeigler,* we are satisfied that the *Zeigler* ruling is persuasive given the more comparable facts of *Zeigler* to this case. Allstate has established a sales structure to encourage individual initiative and the opportunity to earn significant income. Defendant's ability to earn a substantial income must not blind us to the fact that he is an employee of a major insurance company selling its insurance products in accordance with the terms and conditions established by his employer. The compensation scheme does not transform a person in defendant's position into an independent entrepreneur. He remains a salesman whose job is to aggressively solicit new clients and retain old clients.

Certainly, defendant has much more discretion and control over the conditions of his employment than many employees; nevertheless, he remains an employee with significant limitations imposed on him by his employer. Unlike an independent insurance agent, he cannot hire and fire employees without the permission of Allstate. He can sell no product other than Allstate. He has no transferrable book of accounts. Like any employee, he can be terminated.

Defendant's reputation in the community may have generated new business; however, that can be said for any salesman. We cannot ignore that the captive agent, like defendant, is selling a product of a major national insurance company which has fashioned its own reputation for price, quality and service over many years with the assistance of a formidable national, regional and local advertising campaign.

It is also noteworthy that plaintiff never contended that the Ersel Seiler Agency was a distributable asset. Apparently, she recognized that due to defendant's relationship with Allstate, he had no ownership interest in this entity. When goodwill is recognized as a distributable asset, goodwill is usually a facet of the larger asset, such as the law practice in *Dugan* and the entertainment career in *Piscopo*. We have discovered no case in this State in which goodwill has been recognized as an asset unassociated with the business entity. Under these circumstances, we conclude that any goodwill generated by defendant is attributable solely to Allstate, his employer, and is not an asset subject to equitable distribution.

Affirmed.