[No. 8311-0-III.   Division Three.   June 28, 1988.]

*In the Matter of the Marriage of* MARGARET BROOKS, *Respondent, and* TERRY A. BROOKS, *Appellant.*

*Terry A. Brooks* and *Brooks & Davis,* pro se, *John Gavin,* and *Gavin, Robinson, Kendrick, Redman & Pratt,* for appellant.

*Ronald Whitaker* and *Walters, Whitaker, Finney & Falk,* for respondent.

McINTURFF, C.J.—This appeal involves a property settlement in a dissolution action. Mr. Brooks' primary contention concerns whether his goodwill in the law partnership is community or separate property. We affirm.

Terry Brooks began his law practice in 1967, became a partner in a law firm in January 1971 and was married to Margaret in October 1972. He left that law firm in March 1976, received approximately $15,000 for his interest therein and reinvested the money in another law partnership. This partnership was incorporated in 1981 and its bylaws excluded, as between the partners, any value for goodwill. On December 18, 1986, the marriage of Mr. and Mrs. Brooks was dissolved. Prior to the trial the parties stipulated regarding the value and division of most property.

The court awarded Mr. Brooks, as separate property, his interest in the tangible assets of the law firm, but characterized his goodwill in the firm as community property valued at $93,115; it was awarded to Mr. Brooks.[1]

---

[1] Mrs. Brooks was awarded a cash judgment to balance Mr. Brooks' larger property award.

The first issue is whether corporate bylaws,[2] excluding any value for goodwill, are binding on the court in a dissolution action.

[Goodwill] is often defined as the "expectation of continued public patronage". [*In re Marriage of Lukens,* 16 Wn. App. 481, 483, 558 P.2d 279 (1976)]. Justice Story has more thoroughly defined professional goodwill as:

a benefit or advantage "which is acquired by an establishment beyond the mere value of the capital, stock, funds or property employed therein, in consequence of the general public patronage and encouragement, which it receives from constant or habitual customers on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices."

*Lukens,* at 483–84, citing *In re Marriage of Foster,* 42 Cal. App. 3d 577, 117 Cal. Rptr. 49 (1974).

*In re Marriage of Hall,* 103 Wn.2d 236, 239, 692 P.2d 175 (1984).

Professional goodwill has been recognized in Washington as intangible property subject to division in a marriage dissolution. *Hall,* at 238–39. The important consideration is not whether the goodwill could be sold without the personal services of the professional, but whether it has value to him. *In re Marriage of Fleege,* 91 Wn.2d 324, 327, 588 P.2d 1136 (1979) (goodwill of husband's solo dental practice was a community asset).

Where a medical doctor was a shareholder in a clinic, and the buy–sell agreement between the doctor and clinic did not include a goodwill factor, and no value for goodwill was in fact assigned when a third doctor became a shareholder, *Hall,* at 245–46, stated:

---

[2]Section 9 of the Brooks & Larson, P.S., bylaws provides that the purchase price of the shares shall be the book value of the shares as of the end of the month when disqualification, death, incompetency, retirement, sale, transfer, pledge, hypothecation or attempt occurs; book value shall include no value for goodwill and no amount or value for firm name or leases.

The trial court must, however, inquire whether the omission in the agreement was the result of other factors or deliberations on the part of the shareholders, particularly when the particular agreement is made in close proximity in time to the divorce.

*Hall,* at 246, held the evidence suggested goodwill existed but there was insufficient evidence to support the court's valuation; valuation is a question of fact.

Both parties cite cases from other jurisdictions as authority. Some cases hold the nonshareholder spouse should be bound by the buy–sell agreement or that the buy–sell agreement should at least be considered.[3] Other courts have held the nonshareholder spouse is not bound by the terms of the withdrawal agreement and in some cases, even where the nonshareholder spouse cosigned the withdrawal agreement.[4]

---

[3]*Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169, 1174 (1983) (a nonshareholder spouse was bound by the goodwill valuation clause in corporate bylaws for purposes of establishing the valuation of corporate goodwill in a dissolution action. This ensured that the nonshareholder spouse did not receive a greater value than the shareholder). *See also Ondrasek v. Ondrasek,* 126 Wis. 2d 469, 377 N.W.2d 190, 192 (Ct. App. 1985) (in a dissolution, value of a partner's interest in a professional partnership is determined by the monetary consequences of that partner withdrawing from the business); *Holbrook v. Holbrook,* 103 Wis. 2d 327, 309 N.W.2d 343, 355 (Ct. App. 1981) (capital account was the only value that should be assigned to a lawyer's partnership as an asset where lawyer was entitled to receive only his capital account value on withdrawal and any goodwill is reflected in his salary which can be considered in setting the family support award); and *Hanson v. Hanson,* 738 S.W.2d 429, 436 (Mo. 1987) (value of goodwill of professional practice, subject to division in dissolution proceeding, is determined by the price the practice would bring if sold on open, relevant market to qualified professional; under certain circumstances value may be established by buy–sell agreement).

[4]*In re Marriage of Slater,* 100 Cal. App. 3d 241, 160 Cal. Rptr. 686 (1979) (on theory withdrawal agreement was not signed for dissolution purposes); *Mitchell v. Mitchell,* 152 Ariz. 317, 732 P.2d 208, 210 (1987) (partnership agreement provided that no value was to be placed on goodwill of the firm, however, it did contain provisions for payments to a partner upon retirement or death which were not limited to the firm's tangible assets and accounts receivable, but included a share of net profits for a limited period. A buy–sell agreement had been considered in establishing the valuation of goodwill, but was not dispositive. At best it created a presumptive value which either spouse could rebut); *Stern v. Stern,* 66 N.J. 340, 331 A.2d 257, 260, 74 A.L.R.3d 613 (1975) (of the four payment plans found in the

■ Our State has not considered whether a buy–sell agreement not made in close proximity to a divorce is binding on the nonshareholder spouse in a dissolution action. *Hall* did not reach this issue but held that, at least in some circumstances, buy–sell agreements are not binding in a dissolution action. In light of *Hall* and *Fleege* (that it makes no difference whether the goodwill can be sold), we hold the court did not err in valuing goodwill even though ·it was assigned no value in the Brooks & Larson, P.S., corporate bylaws.

The second issue is whether the court erred by characterizing Mr. Brooks' shares in the professional service corporation as his separate property, but characterizing the goodwill as community property.

The court found Mr. Brooks' goodwill was entirely community property but his interest in the law partnership was his separate property. Generally, characterization of property as community or separate is determined at the date of acquisition and if it is separate at that time, it will remain separate through all its changes as long as it can be traced and its rents, issues and profits are likewise kept separate. *Baker v. Baker,* 80 Wn.2d 736, 745, 498 P.2d 315 (1972); *In re Marriage of Bepple,* 37 Wn. App. 881, 884, 683 P.2d 1131 (1984).

Where separate property owned at the time of marriage is combined with community labor of a spouse to create profits or increase the value of the original separate property, the community is compensated for the laboring spouse's services by his or her salary, assuming the salary is

partnership agreement applicable to a partner who withdraws from a firm, becomes disabled, dies or retires, the formula applicable on a partner's death is presumptively the value to be used in dissolution; here, the partner was entitled to the value of his capital account plus a fixed sum appended to the partnership agreement which was revised quarterly). *But cf. Rogers v. Rogers,* 296 N.W.2d 849, 852–53 (Minn. 1980) (it was reversible error not to consider the terms of the buy–sell agreement which create contingencies that affect the value such as the possibility the shareholder might die or be disabled before he realizes the full value of his interest).

fair. Whether a salary is fair depends largely on the earnings of the corporation during the time it was paid. Any dividends paid or enhanced value of stock resulting from profits reinvested is separate property. *Hamlin v. Merlino,* 44 Wn.2d 851, 858–59, 272 P.2d 125 (1954).

Where the record plainly shows the extent to which the income received by a partner was the result of personal efforts as a jewelry salesman, as compared to the income return on the capital investment in the jewelry business, and a salary was paid the partner, there was no error in characterizing the partner's share of profits as his separate property. *Friedlander v. Friedlander,* 58 Wn.2d 288, 295, 362 P.2d 352 (1961). When the nature of the property has not changed from separate to community over the time of the marriage, some courts have created an equitable lien in favor of the community. *See Bepple,* at 884 (where a non-shareholder spouse acted as a surety to enable the corporation to acquire additional assets, the community was entitled to an equitable lien). However, where

> the original investment of separate funds was small and a large increase in value of the property was due principally to personal efforts of the husband; the whole was held to be community property, even though the asset was in fact shares in a corporation largely run by the husband as if it had been a partnership enterprise.

Cross, *The Community Property Law in Washington,* 61 Wash. L. Rev. 13, 60 (1986) (interpreting *In re Estate of Buchanan,* 89 Wash. 172, 179–80, 154 P. 129 (1916)).

None of the above cases discuss *goodwill* in corporate stock acquired before marriage. Nor do these cases consider interests in professional corporations. Mrs. Brooks contends that in a professional corporation the shareholder spouse contributes labor, primarily; thus, any goodwill is a return for community labor and therefore should be characterized as community property. A California court held professional goodwill in a husband's law practice acquired before marriage may be separate or community or varying degrees

of both depending on the circumstances. *In re Marriage of Lopez,* 38 Cal. App. 3d 93, 113 Cal. Rptr. 58, 67 (1974).[5]

Cases cited by Mr. Brooks would support the conclusion that goodwill as an asset is inseparable from a business as a going concern. *See, e.g., In re Estate of Glant,* 57 Wn.2d 309, 312, 356 P.2d 707 (1960). However, they do not answer the question of whether a separate property business may have goodwill that is community property. In a dissolution there is no attempt to dispose of the goodwill apart from the practice; rather, valuing the goodwill is the task.

Here the court initially followed the approach of the California court in *Lopez,* characterizing the goodwill as 80 percent community property and 20 percent separate property. But on motion for reconsideration, it characterized the goodwill as entirely community property upon the rationale that any separate goodwill Mr. Brooks possessed at the time of his marriage had been expended and that by virtue of his community labors he acquired new community goodwill.

We agree with this result, but reach it by a different path. At the time of the marriage Mr. Brooks had de minimis goodwill in his partnership interest, for he had been a partner less than 2 years before his marriage. *See In re*

---

[5]*Lopez* held there is no fixed standard for apportioning the separate and community property; courts should choose an equitable method depending on whether the capital investment in the separate property or the personal activity, ability, and capacity of the spouse is the chief contributing factor in the realization of income and profits. One method is to allocate a fair return on the professional spouse's investment and allocate any excess to community property. A second method is to determine the reasonable value of the husband's services, allocate that amount as community and treat the balance as separate property. A court need not limit the community interest only to a salary fixed as a reward for a spouse's services but may select whatever formula will achieve substantial justice between the parties. The first approach is more likely applicable when the husband's separate property played a key role in the law practice. *Lopez,* 113 Cal. Rptr. at 66. Other cases which considered characterization of appreciation in stock value (though not specifically as goodwill), when the stock was acquired as separate property, were found in Annot., *Divorce and Separation: Appreciation in Value of Separate Property During Marriage Without Contribution by Either Spouse as Separate or Community Property,* 24 A.L.R.4th 453 (1983 & Supp. 1987).

*Marriage of Aufmuth,* 89 Cal. App. 3d 446, 152 Cal. Rptr. 668, 679 (1979), *disapproved on other grounds in In re Marriage of Lucas,* 27 Cal. 3d 808, 614 P.2d 285, 166 Cal. Rptr. 853 (1980) (youth and inexperience meant husband had not contributed to the goodwill of the firm so no value should be placed on goodwill for his partnership interest). The rationale from *In re Estate of Buchanan, supra,* is appropriate: the goodwill existing in Mr. Brooks' interest as a corporate shareholder accumulated after the marriage and was therefore community property.[6]

On cross appeal, Mrs. Brooks contends the court erred by not characterizing Mr. Brooks' *law practice,* not just the goodwill, as community property, since he was in law practice only about 4 years before marriage and 13 years after marriage. The $15,000 proceeds paid Mr. Brooks by his former law firm was reinvested in the current corporation. However, Mrs. Brooks argues it is not known if all the $15,000 was separate property because it represents a return from Mr. Brooks' practice of law before and after his marriage; thus, it was community property. Moreover, the corporate law firm has made hundreds of thousands of dollars; whereas, Mr. Brooks' investment was very small.

These arguments are rejected. *Baker v. Baker, supra; In re Marriage of Bepple, supra.* Mr. Brooks had a separate property interest in his law practice acquired before marriage. Although we find there was no goodwill at the time Mr. Brooks acquired his partnership interest, there was, under *Hamlin,* an interest in the partnership. The interest was Mr. Brooks' separate property. There is no evidence the community was not fully compensated by Mr. Brooks' salary. Therefore, the increase in his partnership interest, exclusive of goodwill, was separate property. There was no

---

[6]This is not to say that goodwill in a law practice can never be separate property. We can envision a situation where a well established lawyer acquires an interest in a professional corporation prior to marriage. Goodwill at the time of marriage would remain separate property and, under our present law, returns on that separate property would also be separate property. *See Hamlin v. Merlino, supra.*

error in the court's characterization of the partnership interest as separate property and the goodwill as community.

The third issue is whether there was substantial evidence to support the trial court's finding of the value of Mr. Brooks' goodwill.

*Fleege,* at 326, recognized that valuation of goodwill is a difficult question and set out factors to guide the courts: the practitioner's age, health, past earning power, reputation in the community for judgment, skill, knowledge, and his or her comparative professional success. Several accounting or appraisal methods may be used by the court in conjunction with the *Fleege* factors.

█ Five major formulas to value goodwill have been articulated. Of these, three are accounting formulas: straight capitalization;[7] capitalization of excess earnings;[8] and Internal Revenue Service (IRS) variation of capitalized excess earnings.[9] The fourth method is the market value approach which sets a value on goodwill by establishing the fair price on the current open market if the practice were to

---

[7]*Hall,* at 244 n.1:

| | |
|---|---:|
| Average net earnings | $60,000 |
| Capitalize at 20% | x 5 |
| Total business tangible and intangible assets | 300,000 |
| Less current net tangible assets | −30,000 |
| Goodwill | $270,000 |

[8]*Hall,* at 244 n.2:

| | |
|---|---:|
| Average net earnings | $60,000 |
| Less comparable net salary | −40,000 |
| Average earnings on intangible assets | 20,000 |
| Capitalize at 20% | x 5 |
| Goodwill | $100,000 |

[9]*Hall,* at 244 n.3:

| | |
|---|---:|
| Average net earnings | $60,000 |
| Less rate of return on average tangible assets | −2,500 |
| Subtotal | $57,500 |
| Less comparable net salary | −40,000 |
| Average earnings on intangible assets | 17,500 |
| Capitalize at 20% | x 5 |
| Goodwill | $87,500 |

be sold. The fifth method is the buy–sell agreement method which values goodwill by relying on a recent actual sale or an unexercised existing option or formula set out in a corporate or partnership agreement. These are not the exclusive formulas available, nor must only one method be used in isolation. *In re Marriage of Hall,* 103 Wn.2d 236, 245, 692 P.2d 175 (1984). Valuation of goodwill is a question of fact; findings of fact supported by substantial evidence will not be reversed on appeal. *Hall,* at 246.

The method used by the court resembles the capitalization of excess earnings method recognized in *Hall* as well as the IRS variation of the capitalization method.[10] The combination of these two weighted average methods is supported by the expert testimony of Mr. Davenny, a certified public accountant employed by Ernst & Whinney, regarding the corporation's financial status and of salaries for comparable practices, albeit in Seattle. The court considered the fact that Seattle attorneys make more money than

---

[10]The court in its letter opinion filed May 1, 1986, stated:

In calculating goodwill, I compared several methods to determine Mr. Brooks average annual income:

| | |
|---|---|
| a. Davenny's average of last three years: | 141,000 |
| b. Last five years | 115,305 |
| c. Last seven years, hi & lo years eliminated | 111,305 |
| d. Last five years weighted (most recent year times 5, most distant year times 1) | 128,785 |
| e. Last seven years weighted (hi & lo out) | 121,869 |

I prefer the weighted average method for determining a fair average income figure. The average of the two weighted methods is 125,327, which I rounded to 125,000. Note that the average of the highest method (a.) and the lowest method (c.) is 126,000.

From the average annual income figure, I deduct 10% return on cash basis assets. I then deduct reasonable average income to determine excess earnings. While the evidence relative to reasonable average income was not as precise as it might have been, I felt that the error inherent in using Seattle area figures for 1983 and 1984, taken from equity partners in larger firms would operate to produce a number higher than what might be expected for a lawyer of Mr. Brooks experience in the Yakima area. Thus, any error operates in Mr. Brooks favor by increasing reasonable average income and thus reducing excess earnings.

No change in the method of valuing goodwill was made upon reconsideration.

Yakima attorneys to work in Mr. Brooks' favor. See footnote 10. There was also evidence of Mr. Brooks' salary over the past few years. Because the methodology of the trial court comports with *Hall* and its factual findings are supported by substantial evidence, we find no error.

The fourth issue is whether the court should continue to recognize goodwill of a lawyer as property subject to equitable distribution when so few lawyers have goodwill.

Mr. Brooks argues that salaried lawyers cannot have goodwill no matter how much they earn. *In re Marriage of Hall, supra.* Of the remaining lawyers who potentially have goodwill, most do not have goodwill because their incomes are average or lower under the *Fleege* factors. He, therefore, argues it is intrinsically unfair and unreasonable to apply the concept of goodwill as property in the forced–sale context of a successful lawyer's divorce.

We find *Hall,* at 241, definitive on this contention— goodwill is a distinct asset of a professional practice.

The fifth issue is whether the court erred in dividing the personal property between the parties because it did not follow a stipulation.

Mr. Brooks contends the stipulated value of the personal property was $57,136 after agreed adjustments, $32,289 worth of property to be received by Mrs. Brooks and $24,847 to be received by Mr. Brooks. The personal property consisted of household goods, cars, jewelry and country club membership. Mrs. Brooks received $30,417, and Mr. Brooks $26,719, totaling $57,136.

A trial court's discretion in dividing property is wide and will not be interfered with except for manifest abuse of such discretion. *In re Marriage of Lindsey,* 101 Wn.2d 299, 307, 678 P.2d 328 (1984). Since Mr. Brooks received a larger share of the personal property than provided by the stipulation, interference with trial court discretion is not required.

In summary, the Brooks' property settlement is affirmed. Looking at the disposition as a whole, we find it was just and equitable.

GREEN and THOMPSON, JJ., concur.

Review denied by Supreme Court November 1, 1988.