MAR -7 2013
DIVISION III



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

In re the Marriage of: )
)  No.    30228-8-III
JUDY RUTH SWANSON, )
)  ORDER GRANTING MOTION
Respondent, )  FOR RECONSIDERATION IN
)  PART and DENYING IN PART;
and )  AND ORDER AMENDING
)  OPINION
CHESTER JAMES MORRISON, )
)
Appellant. )

THE COURT has considered the respondent's motion for reconsideration and is of the

opinion the motion should be granted in part to address the proper standard of review and denied

in part to the extent it requests reversal of this court's decision.  Therefore,

IT IS ORDERED the motion for reconsideration of this court's decision of January 10,

2013, is hereby granted in part and denied in part.

IT IS ALSO ORDERED the court's opinion of January 10, 2013, is amended as follows:

On pages 4 and 5, the following paragraph is deleted in its entirety:

Article XII of the separation contract dictates that Washington law
governs its interpretation.  In Washington, interpretation of a separation contract
presents a question of law that this court reviews de novo.  *In re Marriage of
Gimlett*, 95 Wn.2d 699, 704-05, 619 P.2d 450 (1981).  The intent of the parties is
controlling and is to be determined by examining their objective manifestations,

including both the written agreement and the context within which it was executed. *In re Marriage of Boisen*, 87 Wn. App. 912, 920-21, 943 P.2d 682 (1997). Furthermore, contracts between spouses are interpreted under the same rules for interpreting any other contract. *In re Estates of Wahl*, 31 Wn. App. 815, 818, 644 P.2d 1215 (1982), *aff'd*, 99 Wn.2d 828, 664 P.2d 1250 (1983). Ambiguities in a contract are interpreted against the drafter. *Lamar Outdoor Adver. v. Harwood*, 162 Wn. App. 385, 395, 254 P.2d 208 (2011). In addition, courts must also consider that spouses "do not deal with each other at arm's length," *Friedlander v. Friedlander*, 80 Wn.2d 293, 301, 494 P.2d 208 (1972), and as such owe each other "the highest fiduciary duties." *Peters v. Skalman*, 27 Wn. App. 247, 251, 617 P.2d 448 (1980).

and the following paragraph shall be inserted in its place:

Article XII of the separation contract dictates that Washington law governs its interpretation. In Washington, the determination of whether a contract contains an ambiguity is a question of law, which this court reviews de novo. *Syrovy v. Alpine Res., Inc.*, 122 Wn.2d 544, 551 n.7, 859 P.2d 51 (1993). "A contract is ambiguous when it is '[c]apable of being understood in either of two or more possible senses.'" *Id.* (alteration in original) (quoting *Ladum v. Util. Cartage, Inc.*, 68 Wn.2d 109, 116, 441 P.2d 868 (1966)). If two or more reasonable meanings exist, then Washington follows an objective manifestation test looking to the objective acts or manifestations of the parties rather than the unexpressed subjective intent of any party. *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 699, 952 P.2d 590 (1998). The parties' objective intent is a question of fact that this court reviews for substantial evidence. *Kenney v. Read*, 100 Wn. App. 467, 475, 997 P.2d 455, 4 P.3d 861 (2000). However, if no objective manifestation of intent can be discerned from the facts presented, then the ambiguity is interpreted against the drafter. *Wash. Prof'l Real Estate LLC v. Young*, 163 Wn. App. 800, 260 P.3d 991 (2011), *review denied*, 173 Wn.2d 1017 (2012). Furthermore, contracts between spouses are interpreted under the same rules for interpreting any other contract. *In re Estates of Wahl*, 31 Wn. App. 815, 818, 644 P.2d 1215 (1982), *aff'd*, 99 Wn.2d 828, 664 P.2d 1250 (1983). Ambiguities in a contract are interpreted against the drafter. *Lamar Outdoor Adver. v. Harwood*, 162 Wn.2d 385, 395, 254 P.3d 208 (2011). In addition, courts must also consider that spouses "do not deal with each other at arm's length," *Friedlander v. Friedlander*, 80 Wn.2d 293, 301, 494 P.2d 208 (1972), and as such "owe each other the 'highest fiduciary duties.'" *In re Marriage of Lutz*, 74 Wn. App. 356, 369, 873 P.2d 566 (1994) (quoting *Peters v. Skalman*, 27 Wn. App. 247, 251, 617 P.2d 448 (1980)).

IT IS ALSO ORDERED the court's opinion of January 10, 2013, is amended as follows:

2

No. 30228-8-III
In re Marriage of Swanson & Morrison

On page 6, after the second full paragraph and before the paragraph that begins "The Supreme Court provided", insert the following paragraph:

Thus, an ambiguity exists which this court must resolve in accordance with the parties' objective intent. While the trial court resolved this ambiguity in Ms. Swanson's favor, it did so without reference to the parties' objective manifestations. This is because both the separation contract and the trial court record lack any evidence of the parties' objective intent regarding disposition of the cattle. But based on prior case law it appears the proper unit of distribution should be viewed as the business itself, and not the individual assets that make up the business.

DATED: March 7, 2013

FOR THE COURT:

KEVIN M. KORSMO, Chief Judge

3

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

In re the Marriage of:                )
                                       )        No. 30228-8-III
JUDY RUTH SWANSON,                     )
                                       )
                    Respondent,        )
                                       )
    and                                )
                                       )
CHESTER JAMES MORRISON,                )        UNPUBLISHED OPINION
                                       )
                    Appellant.         )

KORSMO, C.J. — Judy Swanson and Chester Morrison divorced after 23 years of

marriage. Prior to the dissolution, the parties disposed of their property through a

separation contract. RCW 26.09.070(3) requires adherence to the separation contract in

all judicial proceedings. Because the trial court went outside of the separation contract in

granting Ms. Swanson a right of reimbursement, we reverse.

FACTS

Mr. Morrison and Ms. Swanson married in 1987. Both came to the marriage owning substantial separate property. To protect the character of that separate property, the two entered into a separate property contract when they married.

As the years passed, the two largely maintained their prior separate lives. Mr. Morrison operated the cattle ranch that had been in his family for over 100 years and Ms. Swanson maintained other employment. The two never commingled their income or assets, or shared in each other's debts and liabilities. About the only thing that the record shows that they ever did together was live in Ms. Swanson's house. Ms. Swanson did the cooking and maintained the house while Mr. Morrison regularly paid the utilities.

In 2010, the two decided to dissolve their marriage. To dispose of their property, Ms. Swanson hired an attorney to draft a separation contract. Mr. Morrison was advised to retain counsel and given the opportunity to do so. Forgoing this advice, Mr. Morrison signed the separation contract pro se.

Three months after the contract was signed, Ms. Swanson went to court seeking division of property allegedly left out of the separation contract. Specifically, she claimed that the parties failed to dispose of Mr. Morrison's cattle herd in the separation contract. It does not mention the cattle herd by name in any of its provisions. The contract required that any omitted property would be divided equally.

2

The case proceeded to trial seven months later with Mr. Morrison represented by counsel. He argued that the contract had not omitted the cattle because they were a part of the ranch which the contract granted to him as his separate property acquired prior to marriage. Ms. Swanson argued that she had a right of reimbursement in the amount of one-half of the value of the herd due to the labor she expended as a homemaker, which in turn freed up Mr. Morrison to work the ranch. At the conclusion of the trial, the court accepted Ms. Swanson's argument and granted her a right of reimbursement for one-half of the herd's value due to her homemaking. Mr. Morrison then timely appealed.

## ANALYSIS

Mr. Morrison challenges various aspects of the trial court's ruling, but we find the contract dispositive and do not address his other arguments. Under the terms of the contract, the cattle are included in the ranch awarded to Mr. Morrison and Ms. Swanson waived any claim for reimbursement for her community efforts.[1]

---

[1] We further note that the efforts of one spouse to maintain a home do not give rise to a right of reimbursement. *In re Marriage of Johnson*, 28 Wn. App. 574, 579, 625 P.2d 720 (1981). On appeal, Ms. Swanson tries to defend the award on the basis that Mr. Morrison's separate property increased in value due to her homemaking efforts. This argument fails due to the fact that no evidence was adduced that showed the separate property increased in value during the marriage. Given evidence of the ranch's annual losses and the fact that the herd was significantly smaller by the end of the marriage, it is unlikely that the ranch increased in value during the marriage. Moreover, a lien for one-half of the value of the cattle is not the same as a lien for one-half of the increase in the cattle's value.

3

Well-settled principles govern resolution of this appeal. "[A separation contract] shall be binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties on their own motion or on request of the court, that the separation contract was unfair at the time of its execution." RCW 26.09.070(3). When a marriage dissolves, the trial court typically has wide discretion in making a just and equitable distribution of the community and separate property. RCW 26.09.080. But when the parties chose to enter into a separation contract, RCW 26.09.070(3) takes away that discretion and turns the property distribution into a case of contract interpretation. *In re the Marriage of Shaffer*, 47 Wn. App. 189, 193-94, 733 P.2d 1013 (1987).

Article XII of the separation contract dictates that Washington law governs its interpretation. In Washington, interpretation of a separation contract presents a question of law that this court reviews de novo. *In re Marriage of Gimlett*, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981). The intent of the parties is controlling and is to be determined by examining their objective manifestations, including both the written agreement and the context within which it was executed. *In re Marriage of Boisen*, 87 Wn. App. 912, 920-21, 943 P.2d 682 (1997). Furthermore, contracts between spouses are interpreted under the same rules for interpreting any other contract. *In re Estates of Wahl*, 31 Wn. App. 815, 818, 644 P.2d 1215 (1982), *aff'd*, 99 Wn.2d 828, 664 P.2d 1250 (1983). Ambiguities in a contract are interpreted against the drafter. *Lamar Outdoor Advertising*

4

*v. Harwood*, 162 Wn. App. 385, 395, 254 P.3d 208 (2011). In addition, courts must also

consider that spouses "do not deal with each other at arm's length," *Friedlander v.*

*Friedlander*, 80 Wn.2d 293, 301, 494 P.2d 208 (1972), and as such owe each other "the

highest fiduciary duties." *Peters v. Skalman*, 27 Wn. App. 247, 251, 617 P.2d 448

(1980).

Because the parties entered into a separation contract and because the record lacks

any evidence of its unfairness, the trial court was not free to vary from the terms of that

agreement. The first issue is who has rights to the cattle under the separation contract.

Two provisions of the contract are particularly important to the resolution of the

cattle issue. The first provision is Article V, which controls the disposition of omitted

assets. Under this provision, any property not set forth in Articles XIV or XV of the

contract must be divided equally. Article XV sets forth Ms. Swanson's property. Article

XIV does not address property; it instead declares that the contract conveyed any interest

one spouse may have had in property that was now the other spouse's personal property.

Article XVI, however, sets forth Mr. Morrison's property. The reference in Article V to

Article XIV appears to be a scrivener's error, which we interpret to mean Article XVI.[2]

It is well settled that courts may reform a contract to correct a scrivener's error. *See, e.g.,*

---

[2] If the contract was interpreted literally, then Mr. Morrison's property would be beyond the reach of the omitted property clause and Ms. Swanson would have no claim at all to any omitted property.

*Snyder v. Peterson*, 62 Wn. App. 522, 526-27, 814 P.2d 1204 (1991). Thus, if Ms. Swanson is to prevail this court must find that the cattle were not contemplated in Article XVI.

Article XVI states that "Husband shall be granted and conveyed the following real and personal property, which is equivalent to Husband's separate property and one-half the community property free and clear of any right, title or interest of Wife therein." Clerk's Papers (CP) at 17. The provision then goes on to list various tangible and intangible assets. Nowhere in the list are the cattle specifically mentioned.

Mr. Morrison argues that the cattle were granted to him under Article XVI, ¶ B, as "Any and all property owned prior to marriage." CP at 18. At trial, Ms. Swanson responded by noting that the cattle that are on the ranch today are not the same cattle that Mr. Morrison owned prior to marriage 23 years ago. In rebuttal, Mr. Morrison argued that the cattle are the ranch and that separating the two would be absurd because it would in effect grant Ms. Swanson an interest in Mr. Morrison's ranch, which he owned prior to marriage. Both interpretations are plausible depending on whether the proper unit of distribution is viewed as the business itself or the individual assets that make up the business.

The Supreme Court provided some guidance on this issue in *Wolfisberg v. Wolfisberg*, 51 Wn.2d 103, 316 P.2d 114 (1957). There it was the wife who came to the marriage owning a substantial number of cattle and who was awarded the cattle when the

6

marriage ended. *Id.* at 104-05. Notably, the court did not speak of the cattle in terms of being a separate asset: "The trial court . . . emphasized the fact that the wife's farm (separate property at marriage), as a going business, was in the nature of a capital investment." *Id.* at 107. The cattle, machinery, and other equipment were all enrolled into the dairy farm operation and it was the operation and not its individual components that were at issue. *Id.* at 105-06. The cattle were considered the wife's separate property despite the fact that the cattle on the farm at the time of divorce could not have been the same cattle that she had when she married. *Wolfisberg* stands for the proposition that livestock in a dissolution case should not be viewed individually when they are the stock-in-trade of a spouse's business. Thus, it is the business itself that is the proper unit of distribution, not the components that make up the business.

*Wolfisberg* supports Mr. Morrison's argument that the cattle are the ranch operation. By removing the cattle from the business, there is no business left to operate. No one disputes that the ranch is Mr. Morrison's separate property under the separation contract. But to remove the cattle from that business would in effect also remove the business from the separation contract.

The same reasoning holds true in another spouse-owned business case. *In re Marriage of Brooks*, 51 Wn. App. 882, 756 P.2d 161 (1988). There the wife disagreed with the characterization of the good will of the husband's law practice as community property. She instead sought re-characterization of the whole law practice as community

7

property. *Id.* at 889. The court held that the law practice was the husband's separate property because he acquired it prior to marriage. *Id.* It is very doubtful that the husband's book of business after 13 years of marriage was the same as when he married. Yet, the court did not treat any changes in his book of business during marriage as being a separate asset capable of characterization. Although the business's value changed due to community efforts, the business as a whole (clients-included) was still the lawyer spouse's separate property acquired prior to marriage.

Thus, under *Wolfisberg* and *Brooks*, we interpret Article XVI to include the cattle as an inseparable component of the ranch. Furthermore, Ms. Swanson, as the drafter's principal, was in the best position to avoid the ambiguity caused by not specifying what property Mr. Morrison owned prior to marriage. Combined with the fact that spouses do not act at arm's length and because Ms. Swanson owed Mr. Morrison the highest of fiduciary duties, we further interpret any ambiguity in Article XVI against Ms. Swanson. The cattle were Mr. Morrison's separate property under the contract and were not subject to distribution under the omitted property clause.

The contract likewise disposes of Ms. Swanson's argument that she was entitled to a lien for any increase in Mr. Morrison's separate property resulting from his efforts during the marriage.[3] Article XXI, entitled Finality, states that the agreement

---

[3] Mr. Morrison has not asserted a community lien interest in any increase in Ms. Swanson's separate property resulting from her efforts during the marriage.

8

shall constitute a full and complete settlement of all their property rights and obligations, and, neither party will claim, assert, or demand of or against the other any relief different than is embodied in this agreement, and will not assert or demand that it is inconsistent or contrary to the terms embodied herein.

CP at 20.

Having disposed of all of the property and recognizing that the agreement was designed to settle all matters under the contract, Ms. Swanson was not able to argue that she was entitled to a lien for any increase in the value of Mr. Morrison's separate property resulting from his efforts on behalf of their community. The "full and complete settlement of all their property rights" precludes a claim for a community lien under Article XXI. The only avenue for additional relief under the contract was Article V addressing omitted property. However, it does not speak to potential community liens on the parties' respective property.

Ms. Swanson waived any claim she might have had for a community lien under the Finality clause of the contract. The trial court erred in awarding her a lien for her homemaking services.

We reverse and remand with instructions to enter judgment in favor of Mr. Morrison.

9

No. 30228-8-III
*In re Marriage of Swanson*

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____
Sweeney, J.

_____
Siddoway, J.

10