# N THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In re the Marriage of: | ) | No. 74930-7-I |
| STEPHANIE F. VANDAL, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| JOSEPH H. VANDAL, | ) | FILED: June 19, 2017 |
| | ) | |
| Appellant. | ) | |

APPELWICK, J. — The trial court divided the Vandals' property upon the dissolution of their marriage. Joseph contends that the trial court erroneously classified his business as community property. He asserts that the trial court double counted the business's bank accounts. He argues that the overall distribution of property is inequitable, considering the judgments against him. We affirm and award attorney fees to Stephanie.

## FACTS

Joseph and Stephanie Vandal were married on August 4, 2000. Joseph's[1] two young children from his prior marriage lived half of the time with the couple. Stephanie became a stay-at-home mother to care for the children.

The couple had a son together, who was born on June 25, 2002. Their son has been diagnosed with autism spectrum disorder.

---

[1] We refer to the parties by their first names for clarity. No disrespect is intended.

During the marriage, the couple's sole source of income was Joseph's business. Joseph started his own business as a certified public accountant (CPA) in 1989 and incorporated it in 1991. He received a salary of approximately $70,000 from the business.

Joseph and Stephanie separated on August 2, 2014. Stephanie filed for dissolution. After trial, the court entered lengthy findings of fact and conclusions of law. The court found that the parties' community property included: the proceeds from the sale of the former family home; the business known as Joseph J. Vandal, CPA, P.S., together with its bank accounts and fungible assets; specific furniture and personal property; a 2007 BMW; and funds in bank accounts at the time of the parties' separation or as transferred after separation from community funds. Stephanie's share of the community property was worth $211,646, while Joseph's was $787,007. Accordingly, the court awarded Stephanie a $287,680 equalizing payment.[2]

Joseph appeals.

## DISCUSSION

Joseph argues that the trial court erroneously classified the business as community property. Br. of Appellant, 7. He contends that even if this characterization was proper, the trial court erred by awarding him the business's bank accounts twice. He further asserts that the overall distribution of assets was

---

[2] The court noted that this payment could also be viewed as a $175,513 equalizing payment, plus reimbursement for mortgage payments in the amount of $17,167, plus reimbursement of the increase in the line of credit of $95,000.

inequitable, especially the maintenance award to Stephanie. Stephanie argues that she is entitled to attorney fees on appeal.

## I.   Community Property

Joseph argues that the trial court erred in characterizing his business as community property. He asserts that because the business was established before the marriage, it was presumed to be separate property, and the burden was on Stephanie to prove otherwise. Joseph challenges the findings of fact supporting this characterization and the conclusions of law on this issue.[3]

A court's characterization of property as separate or community is a question of law reviewed de novo. In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002). But, factual findings upon which the court's characterization of property is based are reviewed for substantial evidence. Id. Substantial evidence is evidence of sufficient quantity to persuade a rational person of the truth of the stated premise. Id.

The character of property as separate or community property is determined as of the date that the property was acquired. In re Estate of Borghi, 167 Wn.2d 480, 484, 219 P.3d 932 (2009). Once property is established as separate property, a presumption arises that it remained separate property. Id. But, this presumption can be rebutted with sufficient evidence that the owner intended to change the property from separate to community property. Id.

---

[3] Specifically, Joseph challenges findings of fact 2.8.2.3, 2.8.2.4, 2.8.2.5, 2.8.2.6, and 2.8.2.7 and conclusions of law 3.4.5.1(f), 3.4.5.2(a), and 3.4.5.4(e).

Here, the court characterized Joseph's business, Joseph J. Vandal CPA P.S., as community property. The business does audits and tax returns for condominium homeowners' associations (HOAs). Joseph began the business in 1989 and incorporated it in 1991, before the marriage. Thus, it was separate property at the time of the marriage.

But, the court determined that the business lost its characterization as separate property. The court found that community funds were paid into the business. And, many community and family expenses were paid through the business during the marriage. While Joseph characterized these payments as loans and said that the accounts were reconciled at the end of the year, no records verified this allegation. Consequently, the court did not find Joseph's testimony to be credible. The court further found that almost the entirety of the business's value was based on the goodwill generated by Joseph's toil. The valuation experts and Joseph testified that the clientele of the business required constant renewal. And, the court found that Joseph's salary of $70,000 was inadequate to compensate the community for his labor. Adopting primarily the analysis of Stephanie's expert, Steven Kessler, the trial court found the value of the business was $446,000, and awarded it to Joseph.

A. Commingling

Joseph argues that the trial court's findings are not supported by substantial evidence. First, he contends that the minimal commingling between the business accounts and community accounts does not support characterizing the business as community property.

Where separate property is commingled with community property with no effort to keep the two separate, it becomes community property. In re Marriage of Skarbek, 100 Wn. App. 444, 448, 997 P.2d 447 (2000). Commingled funds are presumed to be community property. Id. The burden is on the spouse claiming separate funds to clearly and convincingly trace the funds to a separate property source. Id.

Joseph testified about the commingling of business and community funds. He said that all of the income earned from the business went to the community. Stephanie would sign checks for community expenses. Joseph would then write a check from the business into their joint account. He would write "loan" on the check to indicate that it was money coming from the business.[4] The community paid its expenses in this way, including the mortgage, line of credit, utilities, plastic surgery, vacation rentals, and their son's schooling. This evidence supports the trial court's finding of fact 2.8.2.4.

Joseph also testified that he used an equity line of credit secured by the family house for the business. He explained that when there was a deficit with the business, he would use this equity line of credit. During his deposition, he estimated that around $100,000 had been drawn from the equity line of credit for shortages in the business. This evidence supports the trial court's finding of fact 2.8.2.3.

---

[4] No evidence was presented that these loans were ever repaid or that the accounts were otherwise reconciled. As such, the trial court found that Joseph's testimony that these expenses were loans was not credible. Credibility determinations are for the trier of the fact, and this court will not review them on appeal. In re Marriage of Burrill, 113 Wn. App. 863, 868, 56 P.3d 993 (2002).

Joseph argues that the commingling of business and community funds does not establish that the business became community property. But, Joseph failed to produce records at trial to show that the loans from the business to the community were ever reconciled. Nor did he show that these funds were treated as loans for purposes of federal taxes. These records would have been in Joseph's control, yet he—a CPA—did not produce them. We conclude that the extensive commingling of funds suggests that the business lost its nature as separate property.

B. Goodwill

Second, Joseph argues that the value of the business was not primarily based on his own labor. Joseph argues that much of the company's goodwill is based on the creation of systems that he set up early on and allowed the company to largely run itself.

Washington recognizes professional goodwill as an intangible property subject to division in a dissolution. In re Marriage of Brooks, 51 Wn. App. 882, 884, 756 P.2d 161 (1988). Goodwill is often defined as an expectation of continued patronage. In re Marriage of Hall, 103 Wn.2d 236, 239, 692 P.2d 175 (1984). Goodwill is a property or asset that supplements the earning capacity of another asset, a business, or a profession. Id. at 241. It is a distinct asset, not merely a factor contributing to the value of a business. Id. Where goodwill is acquired during marriage, it may be community property. See Brooks, 51 Wn. App. at 888-89.

Both parties' experts testified about the valuation of Joseph's business, including the goodwill. Kessler, Stephanie's expert, used the excess earnings approach to determine the amount of goodwill in the business. Kessler began by calculating the net tangible assets of the business, which reflects Joseph's net investment in the practice. Once he determined the business's sustainable earnings, the next step was to determine a market based compensation for Joseph. Kessler selected a compensation of $200,000 to represent Joseph's unique skillset. Using a capitalization rate of 22 percent, Kessler found the goodwill value to be $496,234. He valued the business at $534,598.

Douglas McDaniel, Joseph's expert, also testified about the valuation of the business. McDaniel used the excess earnings approach method as well. But, McDaniel used a different capitalization rate of 26.8 percent. And, he used a different market based compensation of $235,000. Under this approach, McDaniel came up with a goodwill value of $255,078. McDaniel valued the business at $271,466.

The court did not fully adopt either expert's analysis. Instead, it adopted McDaniel's capitalization rate of 26.8 percent to reflect the risk inherent in the business. Otherwise, the court adopted Kessler's analysis. Kessler submitted a revised business valuation based on the court's order. Using this capitalization rate, the indicated goodwill value was $407,356. The indicated value of the business was $445,720.

The risk inherent in the business included the fact that Joseph has to go up for bid every year, and there are competitors. Joseph testified about this risk. He

7

explained that every year the business has to go out for bid. Then, they have to follow up and meet with the clients. He recognized that his clients do not have much loyalty to him, because the HOA boards and the condominium management companies change frequently. His clients' loyalty is also extremely price sensitive: if they can save even $300, then they will switch accountants nine times out of ten. And, he said that a lot of how he gets new clients is "just going out there, shaking hands."

Joseph presented no evidence of the value of the business's goodwill prior to the marriage. He could have produced records to establish that the company's goodwill was not the result of his own labor. But, he did not do so. We conclude that the experts' testimony supported the finding that the value of the business was based almost entirely on goodwill. And, Joseph's client base had constant turnover, requiring him to constantly go out and form new relationships with new clients.

Joseph's toil was community labor. See In re Marriage of Lindemann, 92 Wn. App. 64, 76-77, 960 P.2d 966 (1998) (increased value in cohabitant's business was community in character because it had been achieved by community labor). Thus, we conclude that substantial evidence supports the finding that the business's goodwill was developed by community labor.

C. Compensation to Community

Third, Joseph asserts that the community was more than adequately compensated for his toil. He contends that the finding of fact which sets out his salary is misleading. Joseph argues that since all of the substantial funds used by

the community came from the business—approximately $318,000 per year—the community received far more compensation than merely Joseph's salary.

The community is entitled to the economic benefit of a spouse's services. Pollock v. Pollock, 7 Wn. App. 394, 401, 499 P.2d 231 (1972). Consequently, if a spouse "seeks to retain the separate character of income derived from a combination of his separate business and his post-marital personal services with respect thereto, he is required to make a contemporaneous segregation of the income so derived as between the community and his separate estate." Id. This can be done by allocating a reasonable, fair salary to the community. Id.; Brooks, 51 Wn. App. at 886-87. Whether a salary is fair depends largely on the earnings of the business at the time. Brooks, 51 Wn. App. at 887.

Here, Joseph made no attempt to keep the business's income separate from the community, as discussed above. He admits that his salary of $70,000 was insufficient to compensate him for his labor. He admits that community expenses were paid from the business's income rather than merely from his salary. Thus, the trial court's finding that Joseph's salary alone was inadequate to compensate the community for his labor is supported by substantial evidence.

The trial court's findings regarding commingling, goodwill, and compensation to the community are supported by substantial evidence. The majority of the business's value was derived from goodwill. This goodwill was created by Joseph's labor and was a community asset. Joseph did not adequately compensate the community for his toil. And, he did not produce records at trial to show that community and business funds were treated separately. Therefore, we

conclude that there was clear, cogent, and convincing evidence to overcome the presumption of separate property. The trial court did not err in characterizing the business as community property.

II.  Double Counting

Joseph argues that the trial court erred by double counting assets that it awarded to him. He contends that the trial court awarded him the business's bank accounts twice. This is so, he asserts, because the valuation of the business included the business's bank accounts, yet the trial court awarded both the value of the business and its bank accounts to Joseph.

The trial court has broad discretion to distribute property in a dissolution proceeding. In re Marriage of Wallace, 111 Wn. App. 697, 707, 45 P.3d 1131 (2002). A party challenging a property distribution must demonstrate that the trial court manifestly abused its discretion. Id.

Joseph raised the issue of potential double counting after the trial court issued its memorandum opinion. He supported this with a declaration of his expert, who stated that the bank accounts were included in the value of the business. During the hearing to enter the final orders, the trial court invited Joseph to move for reconsideration on this issue. Joseph did not do so. Nor did he attempt to identify and trace the allegedly double counted funds at the hearing.

Joseph still has not identified and traced these funds on appeal. Instead, he simply asserts that the court must have double counted funds, because it counted the business's bank accounts twice. But, Joseph's argument overlooks

the different dates between the valuation of the business and the valuation of the bank accounts.

The experts included the liquid assets of the business in their valuations. However, both experts used a valuation date of December 31, 2014. In awarding the business's bank accounts to Joseph, the trial court used a valuation date of August 2, 2014, the date of separation. In fact, the trial court valued the bank accounts as of the date of separation to account for Joseph's extensive postseparation withdrawals, which were made in violation of a temporary restraining order. During the five months that passed between the trial court's valuation date and the business's valuation date, Joseph withdrew funds across accounts, and the business was still operating. Because Joseph never provided records that could identify the exact funds he claims were counted twice, we conclude that the trial court did not abuse its discretion.

III. Maintenance

Joseph contends that the trial court set his continuing financial obligations, including maintenance, beyond his earnings. While he does not challenge any of the findings of fact supporting these obligations except those previously discussed, Joseph contends that the overall distribution is inequitable.

RCW 26.09.090(1) permits the trial court to grant a maintenance order for either spouse, in such amounts and for such periods of time as the court deems just. The court must consider all relevant factors including: the financial resources of the party seeking maintenance and that party's ability to meet his or her needs independently; the time necessary to obtain education or training to enable the

party to find employment; the standard of living established during the marriage; the duration of the marriage; the age, health, and financial obligations of the party seeking maintenance; and the ability of the party from whom maintenance is sought to meet his or her needs while still meeting those of the other party. RCW 26.09.090(1)(a)-(f).

An award of maintenance is within the broad discretion of the trial court. In re Marriage of Terry, 79 Wn. App. 866, 869, 905 P.2d 935 (1995). The only limitation on the amount and duration of maintenance under RCW 26.09.090 is that the award must be just. In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990). We will find an abuse of discretion only if the trial court bases its award or denial of spousal maintenance on untenable grounds or for untenable reasons. Terry, 79 Wn. App. at 869.

The trial court ordered Joseph to pay maintenance to Stephanie in the amount of $9,000 per month for 72 months. It based this on the fact that both parties are in good health, but Stephanie did not work outside the home during the marriage. While Stephanie intends to go back to school to obtain a master's degree and teaching certificate, this will take about five years. The parties had a high standard of living during the marriage, and Joseph's income is $26,501 per month. And, the court found that Joseph's income far exceeds his personal living expenses.

Joseph does not challenge any of these findings, and therefore they are verities on appeal. In re Marriage of Petrie, 105 Wn. App. 268, 275, 19 P.3d 443 (2001) (unchallenged findings of fact are verities on appeal). But, he contends that

the court should have considered his debts and other judgments when determining the overall distribution. Joseph points out that in addition to the $9,000 per month maintenance order, he also has to pay $1,034 per month in child support for their child and health insurance for the child. And, he is $90,000 in debt on the business line of credit, which requires monthly payments of about $2,400.

Joseph also points to the judgments against him: $175,513.25 as an equalizing payment to Stephanie to arrive at a 50/50 division of community property, $95,000 to Stephanie to reimburse her for withdrawals on the home line of credit, $17,167.12 to reimburse Stephanie for mortgage payments, and $101,691.39 to reimburse their son for withdrawals from his UTMA (uniform transfer to minors) account. He suggests that he cannot pay off these judgments while making the required monthly payments. And, he alleges that the maintenance award is a windfall, because Stephanie will receive the benefit of the judgments in addition to considerable personal property.

This court has previously upheld maintenance awards to spouses who received significant property awards. See, e.g., In re Marriage of Wright, 179 Wn. App. 257, 261, 270, 319 P.3d 45 (2013). In Wright, the trial court awarded $8,526,834 in community property to the wife, along with a $1.7 million equalizing payment and maintenance of $1 million spread over three years. Id. at 261. It awarded $8,657,042 in community property and $979,966 in separate property to the husband. Id. The husband argued that the trial court abused its discretion by awarding maintenance, because the wife did not demonstrate financial need in light of the property awarded. Id. at 269. The Court of Appeals rejected this

argument, noting that financial need is not a prerequisite to maintenance. Id. at 269-70.

Given the trial court's findings regarding Joseph's salary of $26,501.47 per month, the middle range length of the marriage, the parties' standard of living during the marriage, and Stephanie's role as caregiver for the children during the marriage, we cannot say that the trial court abused its discretion in awarding $9,000 in monthly maintenance. The award is just in light of the parties' financial positions.

This is so even in light of the judgments against Joseph. The trial court may properly consider a spouse's waste or concealment of assets in making a property distribution. Wallace, 111 Wn. App. at 708. Here, Joseph violated the temporary restraining order put in place after the parties separated by withdrawing large sums of money from community accounts. The parties separated on August 2, 2014. On September 15, 2014, the court entered a temporary order imposing financial restraints on the parties. Under these restraints, the parties were prohibited from transferring property or withdrawing any monies from checking accounts of either or both parties, unless in the ordinary course of business or for the necessities of life. And, the parties were ordered notify the other of any extraordinary expenditures. The court also ordered that Joseph was responsible for paying both mortgages on the family home.

In violation of this order, Joseph withdrew a total of $130,691 from community accounts. He failed to pay the first and second mortgages on the family home. Consequently, the mortgages were in arrears in the amount of $17,167

when the home was sold, thereby reducing the proceeds from the sale. Joseph also drew $95,000 on the equity line of credit secured by the family home after separation. And, Joseph completely emptied the son's UTMA account, which contained $101,691 at the time of separation.

These judgments against Joseph do not make the maintenance award unjust. The judgments stemmed from Joseph's actions taken in direct violation of a court order. It was not an abuse of discretion to hold him accountable for those actions.

IV.    Attorney Fees

Stephanie asserts that this court should award her attorney fees on appeal. She contends that she should not be required to use the maintenance and property assets awarded to her to defend the trial court's decisions. Both parties have submitted financial declarations so that we may determine whether to award attorney fees and costs.[5]

Under RCW 26.09.140, a court has discretion to award attorney fees to either party depending on the parties' financial resources. The court should balance the financial need of the requesting party against the other party's ability to pay. In re Marriage of Pennamen, 135 Wn. App. 790, 807-08, 146 P.3d 466 (2006).

Stephanie's financial declaration lists her monthly gross income, which consists of maintenance and child support, as $10,034. Her total net income is

---

[5] Stephanie moved to strike Joseph's financial declaration as untimely. Joseph filed a response, requesting an extension. We deny the motion to strike, and we consider both parties' financial declarations.

$8,394. Stephanie lists monthly expenses totaling $8,400. And, she states that she has no savings to protect her in case of an emergency. Joseph has not made the equalizing payments that could alter Stephanie's financial position.

Joseph's financial declaration states that his monthly gross income is $23,673. His monthly net income, after taxes and maintenance, is $10,203. He lists his monthly household expenses as $7,853. Joseph also asserts that he has monthly payments totaling $3,060.60 toward his other debts.

However, Joseph's listed personal monthly debt payments, such as car and health insurance, were historically paid through the business, not personally, based on the evidence presented at trial. This is supported by the fact that Joseph did not list these expenses on the financial declaration submitted to the court below.

Therefore, we conclude that Stephanie has financial need and that Joseph has the ability to pay her attorney fees. We award Stephanie her appellate attorney fees and costs, subject to her compliance with RAP 18.1(d).

We affirm.

WE CONCUR: